WILLIAM J. PHILLIPS V. JOHN HOGUE ET AL.

FILED DECEMBER 4, 1901. No. 10,663.

Commissioner's opinion, Department No. 3.

1. **Payment Out of Particular Fund:** WORDS OF TRANSFER: AUTHORITY OVER FUND: LIEN: EQUITABLE ASSIGNMENT. · A mere naked promise to pay an existing debt out of a particular fund, unaccompanied by any words of transfer, or the giving of any power or authority over the fund, does not operate either to create a lien thereon or to work an equitable assignment thereof.

2. **Attorney's Lien:** GARNISHMENT. The attorney for a defendant in an action in which the plaintiff has caused funds in the hands of a third party to be garnished, is not entitled to an attorney's lien on the fund so garnished to secure his fee for services performed in the case.

3. **Intervention After Trial on Merits:** LIEN ON FUND. L. intervened in an action between P. and H., claiming to be entitled to certain moneys attached in said action and paid into court, by reason of a lien thereon, and also because of a claimed equitable assignment thereof to him by the defendant prior to the attachment of the fund. Prior to his intervention judgment on the merits had been entered in the action in favor of the plaintiff therein, but no order had been made disposing of the money attached in the case and then in the hands of the court. *Held*, That, even if L. had a right to intervene after a trial on the merits, he · could not, in the absence of a showing that he had a lien on the fund, or that the same had been assigned to him before the service of the attachment, be admitted to question the validity of the judgment or the proceedings leading up to its entry.

ERROR from the district court for Sherman county. Tried below before SULLIVAN, J. *Reversed.*

*Long & Mathew,* for plaintiff in error.

*A. H. Murdock, contra.*

DUFFIE, C.

February 4, 1896, plaintiff in error obtained judgment against John Hogue, one of the defendants in error, in the sum of $682.50. The action was aided by attachment, and one John Terhune was garnished. Terhune, at the time the summons in garnishment was served on him, had in his possession the sum of $589.75 belonging to the defendant, Hogue. Previous to the commencement of this action, Hogue had been sued in the district court of Sherman county by the Capital National Bank, and a large amount of real estate belonging to him attached. John Terhune had also been garnished, and had answered in such garnishment proceedings, stating that he had possession of money belonging to Hogue to the amount of $589.75, being the same money that was afterward garnished in his hands by Phillips, the plaintiff in error herein. Although garnished in the suit of the Capital National Bank against Hogue, Terhune continued to hold the money in his hands belonging to Hogue, having been requested by the attorneys of the bank to hold the same until the case was finally disposed of. At the date of the commencement of this action, the case of the Capital National Bank against Hogue was pending on appeal in this court, and April 10, 1896, an opinion was filed in that case reversing the judgment of the district court. That case, upon being remanded to the district court, was finally dismissed, and February 23, 1898, Phillips obtained an order requiring Terhune, the garnishee, to pay the $589.75 held by him into court, and Terhune thereafter paid the same to the clerk of the court. Mr. Lane, the in-

17

tervener in this action, had been the attorney for Hogue in his litigation with the Capital National Bank, and in other litigations in which Hogue was engaged, and March 28, 1896, he filed a claim for an attorney's lien on "all papers, judgments and property attached" in said cause, and claimed that there was due him, as fees for services rendered, the sum of $1,500. February 24, 1898, Lane filed his petition in intervention in this case, alleging that he had a lien upon the $589.75 garnished in the hands of Hogue, and further alleging that in the fall of 1894 Hogue had assigned this money to him. He further alleged in his petition of intervention that the note upon which Phillips had obtained judgment against Hogue was obtained without consideration, and by undue influence, while Hogue was in a feeble condition of mind and body, and that Phillips procured the appointment of Joseph Pedler, the attorney who appeared in this action for Hogue, and who had waived the issuance and service of summons upon him for the purpose of having judgment entered against Hogue and not to make a defense against the note; that the judgment was void as to Hogue's creditors and asking that the money garnished in the hands of Terhune be awarded to him instead of to Phillips, the plaintiff in error. Other matters were alleged in the petition of intervention which it is not necessary to set forth in detail. An answer was filed by Phillips, and upon the trial of the case the court made a finding of facts and conclusions of law based thereon as follows:

"That, since the object of executing and filing the voluntary appearance by the attorney of defendant Hogue, was, that the judgment might be rendered by default against him, and was not for the purpose of making a defense in said action, but was for the purpose of defrauding the creditors of said Hogue, and that the same was but an effort to do indirectly what he might not do directly—that is, confess judgment—and that said judgment is null and void.

"The court further concludes, that since the giving of said note was without consideration and was for the pur-

pose of defrauding the creditors of the said Hogue, of which the said Lane at that time was one, that as between said association and said Lane, as a matter of equity and good conscience, the said intervener, Lane, should have the fund now in this court, rather than the said plaintiff.

"That the judgment heretofore rendered in this action in favor of the plaintiff and against the said Hogue, be, so far as the same affects the interest of the intervener herein, and the same is hereby annulled and set aside.

"That the money now in the hands of the clerk of this court paid in by the said Terhune, garnishee, be and the same is hereby ordered applied to the payment of the amount herein found due the said intervener from the said Hogue, and the said Terhune, garnishee, is hereby discharged and released from all liability in the premises, and the clerk of this court is hereby ordered and directed to pay to the said Mary C. Lane, administratrix of the estate of Edmond C. Lane, the said sum of money, to-wit: $589.75; and that the plaintiff pay the costs of these proceedings taxed at $————.

"And the intervener is given leave to amend her petition to conform to the evidence and findings of the court."

Lane, in his petition of intervention, alleges that at and before the date of filing the same, John Hogue, the defendant in the action, had deceased, and that James W. Hogue was the administrator of his estate. If Lane had a valid lien upon the money garnished in the hands of Terhune, or if that money had been assigned to him and was his property prior to its garnishment by the plaintiff in error, then he might perhaps sustain this action, although Hogue had deceased prior to the filing of his petition of intervention. The district court found he had a lien upon the fund. We are unable to discover any theory upon which this finding can be sustained. Our statute giving an attorney a lien for services performed is as follows: "An attorney has a lien for a general balance of compensation upon any papers of his client which have come into his possession in the course of his professional employment; upon money in his hands

belonging to his client, and in the hands of the adverse party in an action or proceeding in which the attorney was employed from the time of giving notice of the lien to that party." Compiled Statutes, 1901, ch. 7, sec. 8. This money was neither in the hands of the attorney nor in the hands of the adverse party. It was money in the hands of a third party, who, it is true, had been garnished in the action in which Lane was employed, but who was still in possession of the fund. It had never been paid into court, but was held by the garnishee at the request of the attorney of the attaching plaintiff. Even if it had been paid into court, it would not fall within the letter of the statute which gives a lien only upon money in the hands of the attorney himself, or in the possession of the adverse party from the time of giving notice to that party. We are clear that Lane had no lien upon this fund, and that the finding of the court that he had a lien is wholly unsupported by the facts disclosed, or the law governing the case. Relating to his ownership of the funds under the claimed assignment from Hogue in 1894, the district court made the following finding: "The court further finds that prior to the bringing of plaintiff's suit an oral agreement was entered into between the said Lane and said Hogue, whereby it was agreed that, in case said money should be released then in the hands of the said garnishee, that the said Lane should have the same to apply on his fees; but further finds that no written assignment of the same was ever made, or any order executed by Hogue in favor of Lane to secure the same, but that all that was done concerning it was simply an oral agreement to that effect." The most that can be claimed for the above finding is that it shows a promise on the part of Hogue to use the money in the hands of Terhune in the payment of fees due him; and that is the full extent to which the testimony goes giving it the most favorable construction in favor of the claim of the intervener. But it is urged that the evidence shows an equitable assignment of this fund to Lane; and several cases, among them *Williams v.*

*Ingersoll,* 89 N. Y., 508, are cited in support of this view. The difference between an equitable assignment and a promise to pay a debt out of a designated fund is clearly made by all the cases cited, and for that reason it will be necessary to refer only to the facts in *Williams v. Ingersoll* to show the distinction which all the cases make. Williams was an attorney at law, and represented Heath in important litigation with Ingersoll and other parties.   One of these actions was brought by Heath against Ingersoll to recover damages for malicious prosecution. During the progress of the litigation, Williams, feeling uneasy about his compensation for services which he was rendering and was expected to render in the various actions pending, made an agreement with Heath that "he should be paid for his said services out of any moneys that the said Heath should obtain or become entitled to from any of the matters, suits and proceedings in which he should be engaged, and that he should have a lien for all sums that might be owing or due him for his said services, to the extent of the worth and value thereof, upon any sum Heath might obtain or become entitled to from the said defendants, Lorin and James H. Ingersoll, or from any other person or party connected with said suits," etc.   Heath recovered judgment against Ingersoll in the malicious prosecution action for $10,000, but before the same was paid Ingersoll was garnished at the suit of a judgment creditor of Heath.   While in the litigation which ensued the fund was awarded to Williams, it does not clearly appear from the opinion whether the court regarded the agreement between himself and Heath as creating a lien on the fund, or whether it was looked upon as an equitable assignment thereof.   At page 523 it is said: "We must, therefore, hold that the plaintiff had an assignment of, or lien upon the award, good and effectual against the assignor Heath, and his attaching creditor."   Whether the decision was placed upon the ground of the agreement between Williams and Heath, creating a lien upon the fund, or as working an equitable assignment thereof, is not material, as in either case the court clearly held that in a

case of the character of the one we are now considering the agreement to pay an existing debt out of a particular fund neither gave a lien upon the fund nor operated as an equitable assignment thereof. At page 518 the court, speaking to the point now under consideration, said: "Whatever the law may be elsewhere, it must be regarded as the settled law of this state that an agreement, either by parol or in writing, to pay a debt out of a designated fund, does not give an equitable lien upon the fund, or operate as an equitable assignment thereof. It was so decided in *Rogers v. Hosack,* 18 Wend. [N. Y.], 319. That case was followed and the same rule laid down in *Christmas v. Russell,* 14 Wall. [U. S.], 69, and *Trist v. Child,* 21 Wall. [U. S.], 441." Turning to the case of *Christmas v. Russell, supra,* we find the evidence in support of an equitable assignment much stronger than that offered by the intervener in this case. Christmas had appealed a case to the supreme court of the United States, and procured one Yerger and a certain Anderson to become sureties upon the supersedeas bond. In 1865, he wrote Yerger as follows: "I feel great uneasiness about your liability on the bond in suit of Russell against me. I have ever held the Lyons note as sacred for the payment of this debt, and have it now in New York endeavoring to sell it with the mortgage to pay this debt. I expect to hear from it daily. If not sold, I will send it to you as soon as I return." In 1866 he wrote again to Yerger, saying that he countermanded a sale of the note, and added, "I could not safely send you Lyons's note by mail as it is payable to me or bearer, hence, if lost, might put me to much trouble." Shortly after this he again wrote: "I will hold this note $16,666,—and many years interest,—always subject to this debt, provided the judgment is affirmed, until which time let the matter rest where it is." Within a short period he wrote again as follows: "You may rest assured I will protect you with the Lyons note. * * * This fact should not be known, to enable me to make a good compromise." Shortly afterward he transferred the note to his son. The case in the supreme court was affirmed, and

the sureties became liable to pay the judgment, Christmas having in the meantime become insolvent. In this state of the case the sureties commenced an action against Lyons, the maker of the note, joining Christmas and his son, to whom the note had been transferred, and asking that Lyons be enjoined from paying the note to the defendants, and that, when payment was made, that it be made to them on the ground that they, as sureties, were liable for the payment of the judgment, and that Christmas had made an equitable assignment of the note to them, and that they were in equity entitled to enforce it. The circuit court entered a decree for the complainants as prayed in their bill, but on appeal to the supreme court, the case was reversed; the court, after setting out the letters above referred to, saying: "These letters contain no words of transfer, and nothing which by construction or otherwise, can have any effect in that way. At most, they are only evidence of a promise to pay the judgment, if affirmed, out of the proceeds of one of the notes, and to send the note, if not sold, to Yerger. An agreement to pay out of a particular fund, however clear in its terms, is not an equitable assignment." A distinction is made by the cases between a promise made to pay an existing debt out of a designated fund and a promise to assign or give a lien upon a fund in consideration of services to be performed for the promisor. In the latter case the agreement will be enforced, as was the case in *Williams v. Ingersoll*. In that case, and in the similar cases, there was more than a mere promise to pay an existing debt; there was an agreement for legal services to be performed by one party and for the giving of a lien or the assignment of a fund in payment of these services by the other party. Such an agreement calling for the expenditure of money or the performance of valuable services by the promisee is very different from a naked promise to pay a present debt out of a particular fund. It has every feature of a contract, and those courts which recognize contracts of that character as creating a lien or working an equitable assignment of the fund, proceed apparently upon

the theory that it is a contract which may be specifically enforced in equity.

The intervener, having failed to establish any right or interest in the fund, is wholly without a standing to question the judgment of the plaintiff in error or the manner of its entry. This view of the case, which has, we confess, been forced upon us contrary to our first impressions, and somewhat against our inclination, renders it unnecessary to discuss such other questions as are presented by the record.

We recommend that the judgment of the district court be reversed and the case remanded with direction to dismiss the intervener's petition.

AMES and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed, and the case remanded with directions to dismiss the intervener's petition.

REVERSED AND REMANDED.