## No. 12,521.

AMERICAN AGENCY AND INVESTMENT COMPANY *v.*
GREGG ET AL.
(6 P. [2d] 1101)

Decided December 28, 1931.

Messrs. FILLIUS, FILLIUS & WINTERS, for plaintiff in error.

Messrs. SWERER & JOHNSON, Messrs. NORTHCUTT & NORTHCUTT, for defendants in error.

*In Department.*

Mr. Justice Burke delivered the opinion of the court.

Plaintiff in error is hereinafter referred to as the Investment Company; defendants in error Gregg and others, as Gregg, et al.; defendant in error Flower, receiver, as the receiver; the Crown Hill Cemetery Association, as the Association; Associated Industries, Inc., a corporation, as Industries; David B. Sauve, trustee in bankruptcy of Industries, as trustee; and the American National Bank, trustee for Investment Company, as the Bank.

This suit was brought by Industries against the Association. Thereafter the trustee was substituted as plaintiff and the receiver as defendant. The Investment Company filed its claim for a debt due from Industries, which debt was secured by assignments of balances due the Association from purchases of burial lots. Gregg, et al., holding claims for commissions as agents in the original sale of said lots, intervened, asserting a prior lien on said balances. The trial court found for Gregg, et al., adjusting the claim of each, giving judgment therefor against an impounded fund in the hands of the receiver, directing the receiver to pay accordingly, establishing the claims of Gregg, et al., as prior liens on said balances, and directing application of future collections thereon. To review that judgment the Investment Company prosecutes this writ.

The contracts of Gregg, et al., were of two kinds, "salesman" and "manager." All were made with one Dill as employer. Therein the employes agreed to sell lots for the Association, or manage others in that business, or both, and Dill agreed to pay a certain per cent commission as compensation. The salesman contracts provided: "The first moneys received from sales shall be applied to the salesman's commission until it shall have been paid in full. The salesman shall be under the duty of following up collections and seeing that moneys are paid in, in all cases in which any payment shall not be

promptly made and said payments are delinquent; in case the salesman shall not follow up said collections by reason of the termination or expiration of this contract, all commissions which he then has coming shall be diminished one-fourth to cover the cost of following up such collections.''

Manager contracts provided that the manager's ''commission shall be paid from the first moneys coming in after said salesman shall have received his commission in full.''

The Investment Company made a large loan to Industries and as security therefor approximately one-half of the face thereof in unpaid burial plot contracts was assigned by the Association to the Bank as trustee, all pursuant to an agreement between the Association and Industries. The simple question then is, Who has the prior claim on payments on these contracts to purchase lots, the agents who made the sales and took the contracts or the Investment Company to which such payments were assigned as security?

Counsel for the Investment Company, in their brief, set forth two contentions which seem to us overlapping and confusing. As we understand them they are: (1) The contracts of Gregg, et al., were, and are, the personal contracts of Dill, hence give claimants no rights here; (2) if they are the contracts of the Association neither the facts nor the law give their holders a prior lien as against the Investment Company.

1. The trial court found that Dill was a director, vice president, and general salesmanager of the Association, and acted for it in executing the contracts with Gregg, et al. The evidence, which we need not review, leaves no shadow of doubt of the correctness of those findings. Moreover, Dill owned no lots, had no personal interest in the business, and no interest in the commissions. The Association clearly took over the contracts, accepted their benefits, and discharged their obligations.

Under such circumstances a formal assignment by Dill to the Association would have been meaningless.

2. The contracts of Gregg, et al., being the contracts of the Association we examine next their claim to a first lien on payments made on the lots they sold. All the equities appear to be in their favor. They did the work which produced the fund. But for them the Investment Company could take nothing by its assignment. They had a written contract giving them a first right which they could enforce against the Association. It credited them on its books accordingly and so paid them semi-monthly. They were paid in no other way. The Association assigned to the Investment Company only "its right, title and interest to the within contract." The contracts were not "negotiable" instruments. Most of them bore upon their face a rubber form stamp in which was written the date and the per cent due salesmen and managers. A mere inspection of them should have put the assignee upon notice of the probable existence of claims against them, and casual inquiry would have disclosed the extent of those claims. If Gregg, et al., have not a prior lien on the proceeds they are yet bound by their contracts to collect for the sole benefit of the Investment Company or have their commissions docked for failure to do so, a palpable absurdity. In the light of the foregoing it occurs to us that only controlling and unquestioned authority to the contrary can be permitted to defeat the claims of Gregg, et al., to an equitable assignment.

It is doubtless the general rule that a mere agreement to pay out of a particular fund is not an equitable assignment. *Silent Friend Mining Co. v. Abbot,* 7 Colo. App. 73, 42 Pac. 318; 5 C. J. p. 913, §80. It has been said that "the test is an inquiry whether the debtor would be justified in paying the debt or the portion contracted about, to the person claiming to be assignee." *Fairbanks v. Sargent,* 117 N. Y. 320, 330, 22 N. E. 1039, 6 L. R. A. 475.

In the instant case if the purchasers of lots had paid,

on their contracts therefor, solely the amount of the commissions due to salesmen and managers, can it be doubted that the latter could have held these sums as against the Association, or that the purchasers could have been defeated of their right ·to a credit therefor on their purchase price? Counsel for the Investment Company admit that respectable authority has announced an exception to the general rule, where the promise is to pay out of a fund created through the personal efforts of the promisee and no other compensation is provided for. *Ingersoll v. Coram,* 211 U. S. 335, 368, 29 Sup. Ct. 92, 53 L. Ed. 208; *Phillips v. Hogue,* 63 Neb. 192, 199, 88 N. W. 180. They insist however that *Donnovan v. Middlebrook,* 88 N. Y. Supp. 607, permits no exception to the rule announced by our Court of Appeals in the Silent Friend case, supra. Even so we fail to recognize a duty to follow the appellate division of the New York Supreme Court as against the Supreme Court of the United States. Moreover, we are impressed by the reasoning of the latter and the undoubted equity of the exception.

''It is now definitely settled in the federal courts that a promise based on a consideration to pay out of a particular fund creates a lien on the fund, which attaches to the fund when it comes into existence and which equity will enforce, holding the promisor to be a trustee as soon as he gets title.'' *In re Interborough Consol. Corp.,* 288 Fed. 334, 349, 32 A. L. R. 932, 947. We think the exception to the general rule is equitable, is sustained by modern authority, and supported by reason, and that in the instant case justice demands that it be applied. The judgment is accordingly affirmed.

MR. CHIEF JUSTICE ADAMS, MR. JUSTICE ALTER and MR. JUSTICE BUTLER concur.