No. 14,089.

BEATTY *v.* FELLOWS.
(74 P. [2d] 677)

Decided November 29, 1937.

Mr. John R. Coen, Mr. W. Richard Means, for plaintiff in error.

Mr. Henry E. Lutz, Mr. C. E. Wampler, for defendant in error.

*In Department.*

Mr. Justice Bouck delivered the opinion of the court.

R. J. Beatty, the plaintiff in error, brought against Marion Fellows, the defendant in error, what he termed an "action to impress a trust" upon a certain strip of real estate consisting of that part of vacated Acoma street in Denver lying between block 18 and the west half of block 17 in Whitsitt's addition. Findings were in favor of Fellows, and a judgment of dismissal followed. We think the district court was right.

Fellows derived the title from one J. B. Rush, who conveyed the above-mentioned strip by quitclaim deed of March 26, 1935, executed in the name of "J. B. Rush, Trustee." It is shown by the evidence that Fellows held the naked legal title for the use and benefit of one Wat-

son E. Bowes, who for some reason not apparent from the record has not been made a party here.

Whatever right Beatty may have to the property so vested in Fellows would have arisen by reason of a contract entered into on February 20, 1929, between Beatty and J. B. Rush, Fellow's grantor, which reads as follows:

"This agreement made and entered into by and between J. B. Rush, and R. J. Beatty, both of Chicago, Ill., witnesseth:

"That the said J. B. Rush entered into a contract, on the 24th of January, 1929, with the Clayton Trust Commission for the purchase of a certain tract of property owned by the City and County of Denver, Trustee under the last will and Testament of George W. Clayton deceased, herein described as follows: all of block 18 and the west half of block 17, Whitsitt's addition to Denver, approximating 63 lots, the total purchase price being $63,000.00, payable $5,000.00 down, which was paid on the 24th day of January, 1929, and the balance of $58,000.00 on or before July first, 1929 with interest at the rate of 5% until paid.

"Now therefore be it mutually understood by and between the parties hereto that the said R. J. Beatty is to finance the total purchase of the above described property, and has advanced to the said J. B. Rush $5,000.00 receipt of which is hereby acknowledged, with which the down payment heretofore referred to was made, and the said J. B. Rush is to assume the responsibility of the sale or development of said property and any sum received by the said J. B. Rush over and above the amount of $63,000.00 is to be equally divided between the parties hereto, it being further understood and agreed that the sum of $5,000 already advanced by the said R. J. Beatty, and any further sums so advanced on the purchase of said properties must be deducted and paid over to the said R. J. Beatty before any division of the remaining funds from any sale, is made.

"This contract is binding upon and extends to the heirs, administrator, executors or assigns of both parties hereto.

"Witness our hands and seals this twentieth day of February, 1929.

"J. B. Rush,

"R. J. Beatty."

It will be noticed that Acoma street, a vacated portion of which was deeded to Fellows as aforesaid by Rush and constitutes the only thing involved in the case at bar, is not mentioned in the above contract.

■ ■ The contract remained in full force, no attempt being made to rescind or reform it after Rush as "J. B. Rush, Trustee," received from the City and County of Denver (as trustee under the Clayton will) a conveyance including the vacated Acoma street strip, as well as the property which was specifically described by the option recited in the contract. The provisions of the contract must therefore be taken to mean what they say. In the absence of a decree of reformation it cannot now be contended by Beatty that the property covered by the contract is to be deemed to include vacated Acoma street, unmentioned therein. Moreover, the number and nature of the various money and conveyancing transactions between Beatty and Rush, without even a pretense of tying them to the contract, show clearly that the reference to realty in the contract was merely incidental. For instance, Rush deeded to Beatty's son the west half of block 17, and all of block 18 to a corporation called Denver Plunge, Inc.

■ The uncontradicted evidence discloses that Beatty left to Rush the entire handling of the property actually described, as the contract expressly provided. Beatty's money was merely to "finance the total purchase." It is clear that under the contract Rush was "to assume the responsibility of the sale or development of said property." Among other things Rush formed a

plan for the construction of a large swimming pool with extensive accessories, but these were not to involve Beatty in any liability except the aforesaid financing. Beatty's sole interest was to share equally with Rush in whatever excess came into Rush's hands "over and above the amount of $63,000," such division to occur after repayment to Beatty of all money's advanced by him to Rush. No limitations were laid upon Rush in connection with whatever sale or development he might choose to make. As between Beatty and Rush confidence reigned supreme. It was a clear case of one man's placing implicit confidence in another. If that confidence were abused, a remedy would probably lie against the one who abused it. Rush, however, is not in court to litigate the matter. The contract names both Rush and Beatty as residents of Chicago, and that would apparently be the proper forum for trial of any controversy between them.

█ █ With the foregoing statement of facts before us we have no difficulty in determining that when Rush conveyed the above-mentioned Acoma street strip to Fellows he was acting within his rights, whether considered in connection with the contract or apart from it. Whatever recourse Beatty may have must be asserted by him against Rush by reason of their contract. Neither Fellows nor the Mr. Bowes for whom he held the legal title was a party to that contract. There is no element here of a trust relation or other basis for a remedy capable of impressing a trust or otherwise assailing the validity of the conveyance. Of course, in the light of Rush's plenary authority, there could not be any constructive or resulting trust in favor of Beatty. It certainly was not an express trust. The addition of the word "Trustee" to Rush's name in the deed from the City and County of Denver signifies nothing, in view of the statutory provision found in '35 C. S. A., c. 40, § 9. Thereunder the word was purely description of the person.

That Rush received from the Clayton estate more real property than his agreement with Beatty described as the realty which Rush was to handle in the business transaction between the two is thus seen to be wholly irrelevant and immaterial. The very existence of the vacated strip on Acoma street was unknown to Beatty until shortly before the trial of this case. That the property conveyed to Rush by the City and County of Denver included the strip, and that this latter was subsequently conveyed by Rush to Fellows, is immaterial.

Accordingly the judgment of dismissal entered by the district court, on evidence in large part uncontradicted and presenting as to the remainder a substantial conflict, must be affirmed.

Judgment affirmed.

MR. CHIEF JUSTICE BURKE and MR. JUSTICE YOUNG concur.