No. 15,334.

School District No. 3, in the County of Clear Creek *v.* Central Savings Bank and Trust Company.

(159 P. [2d] 361)

Decided May 14, 1945.

Mr. CLEMENT R. HACKETHAL, Mr. ARTHUR E. ALDRICH, for plaintiff in error.

Messrs. ELLIS, MELVILLE & WINNER, NORMA L. COMSTOCK, Mr. NORMAN H. COMSTOCK, for defendant in error.

*In Department.*

MR. CHIEF JUSTICE BAKKE delivered the opinion of the court.

IN this case the Central Savings Bank and Trust Company, defendant in error, to which we hereinafter refer as the bank, sued plaintiff in error School District No. 3, defendant below, and hereinafter mentioned as the school district, to recover on an assignment of architect's fees, which had been given it as security for money loaned by the bank to one Mitchell in connection with a contract with the school district. After issues joined, trial was to the court who found in favor of the bank and entered judgment against the school district in the sum of $1,090.80 with interest from September 1, 1938, the date when the fee became due. The school district seeks reversal on a writ of error.

There is a lengthy stipulation of facts in the record from which it appears that one Jones, an architect, had entered into a written agreement on July 9th, 1938, with Mitchell, doing business as Associated Consultants, whereby Jones was to divide his architectural fees— one-third to himself, two-thirds to Mitchell—obtained from clients under contracts in which Jones was named as architect on various projects, which contracts were to be obtained by Mitchell through contacts with the Public Works Administration. During the summer of 1938 Mitchell negotiated a contract with the school district for the erection of a new school building. He also prepared a formal contract between Jones and the school district wherein Jones was employed to perform all architectural services in connection with the construction of the proposed school building, for which services he was to receive a total fee of six per cent of the total construction cost of the building, which later was estimated at around $45,000. August 9, 1938, a favorable vote was had in the school district on the

bond issue and the school building was constructed as planned. August 15, 1938, Mitchell applied to the bank for advances of money. The bank agreed to make such loans to him (Associated Consultants) upon the security of the agreement between him and Jones, "if the request upon the School Board as to payment to the plaintiff [the bank] would be signed by the Secretary of the defendant [the school district]." Mitchell thereupon prepared, and had signed, Exhibits C-1 and C-2, attached to the stipulation, which read respectively, as follows:

"August 18, 1938

"Mr. C. H. Randall, Secretary,
School District #3,
Georgetown, Colorado

"Dear Sir:

"This is to request that the warrant in payment for the working plans and specifications be made payable to Central Savings Bank and Trust Company, Denver, Colorado, when drawn. Ben F. Mitchell, Georgetown, Colorado.

The above request is noted and will be complied with. C. H. Randall, Secretary School District #3."

"August 18, 1938

"The Architect,
c/o Associated Consultants,
208 Midland Savings Building,
Denver, Colorado.

"Dear Sir:

"In view of the fact that the tax payers voted favorably in the recent bond election, you are hereby instructed to prepare the working plans and specifications for the proposed new school building.

"As per the terms of the architectural contract, pay-

ment for the working plans will be made upon a basis of 3.6% of the estimated cost of $45,450.00.

"Yours truly,

"C. H. Randall, Secretary of the Board School District #3, Clear Creek County."

August 22nd, Mitchell assigned "all money due or to become due me under our agreement with School District No. 3 * * *" to the bank. The bank, relying on Exhibits C-1 and C-2, on that date, loaned Mitchell $300, and from time to time thereafter it loaned him further sums up to a total of $841.82, the interest thereon amounting to $172.48, as of December 5, 1941. The other members of the board were not consulted at the time Randall signed the above exhibits and they did not learn of the transaction until September 10, 1938, when Mr. Willey, president of the school board, received a letter from Mitchell calling his attention to the assignment and Mr. Randall's consent thereto. A little later, on October 21, Mitchell's attorney wrote Willey to the same effect and asked to be advised "of the Board's future intentions concerning this matter," to which Willey responded, inter alia, that he thought there was no privity between the board and Mitchell "unless acknowledgment by our secretary of an assignment which you refer to would establish such privity and we consider this doubtful." The school board finally concluded that since its contract was with Jones exclusively its only safe course legally was to pay Jones in full. This, it proceeded to do until Jones resigned as architect and it became necessary for the board to hire another to complete the contract, which it did on May 1, 1939. The total payment to Jones was $2,037.79. All of the payments were made to Jones subsequent to notice to Randall on August 18th to make such payments to the bank only, and most of them—enough to reimburse the bank for loans made to Mitchell—were

made subsequent to full disclosure to Willey on September 10, 1938 of said agreement.

None of the numerous exhibits—except C-1, supra—are set out in the original abstract. The bank filed a supplemental abstract setting them out and asks that if the judgment be affirmed the cost of the supplemental abstract be taxed against the school district.

There is no "specification of points" designated as such, as required by rule 111 (f), R.C.P. Colo., but the school district urges the following points for reversal: 1. "Defendant's motion for change of venue should have been granted." 2. "Deceit was practiced by Mitchell upon the board and its secretary." 3. "Exhibit C-1 did not bind the school board to pay the architect's fees to the bank." 4. "Associated Consultants did not acquire a lien on $1,636.20 in the hands of the school board on September 1, 1938, or at any other time." 5. "The cases of American Company vs. Gregg, et al., 90 Colo. 142, and Mitchell vs. Bowman, 123 Fed. (2d) 445, are not controlling in the present case." 6. "The contract between Jones and Mitchell did not authorize Mitchell to collect architect's fees from the school board." 7. "The bank is not entitled to collect two-thirds of $1,636.20, or any other amount, from September 1, 1938."

1. There was no error in the court's denial of the motion for a change of venue, because, if the assignment was binding on the school board, it was payable in Denver where the suit was brought. *Progressive Mutual Ins. Co. v. Mihoover,* 87 Colo. 64, 284 Pac. 1025.

2. As to whether deceit was practiced on Randall at the time he signed the assignment, counsel for the school district concede the evidence to be in direct conflict. Mitchell's testimony is, that when he presented Exhibits C-1 and C-2, supra, they were the only papers he submitted to Randall at the time, and that the contents thereof were fully explained to him. The trial court found specifically that there was no deceit practiced upon Randall, nor anyone else connected with

the school board. It would be unreasonable to believe that Randall, a newspaper editor, did not know what he signed.

3. We think the school board was bound by the act of its secretary. The signing of Exhibits C-1 and C-2 by the secretary was not in violation of any law, and the only contractual provision alleged to have been violated is paragraph 11 of the agreement between Jones and the School board, viz: "11. Successors and Assignments.—The Owner and the Architect, each binds himself, his partners, successors, executors, administrators, and assigns to the other party to this agreement, and to the partners, successors, executors, administrators and assigns of such other party in respect of all covenants of this agreement. Except as above, neither the Owner nor the Architect shall assign, sublet or transfer his interest in this agreement without the written consent of the other." We think Exhibit C-1, instead of being in violation of said paragraph 11, is in accordance with it; that is, Exhibit C-1 was the written approval of the language—"that the warrant in payment" of services rendered by Jones "be made payable to" the bank. If the bank had a lien, the school district had sufficient notice of it and was bound by it. The school district does not contend that the board is in any different legal status than would be a board of county commissioners in a similar transaction, and we know of no reason why it would be under the circumstances herein disclosed; therefore, the case of *Bell v. Board of Commissioners,* 26 Colo. App. 192, 141 Pac. 861, is in point. When the school district, with full knowledge of the facts, made payment to Jones it acted at its peril.

4 and 5. The Associated Consultants (Mitchell) did acquire a lien when the fund came into existence. "An equitable lien for advances may exist where advancements of money or funds are made on the faith of certain property, real or personal, under an agreement or circumstances showing that it was the intention

of the parties to pledge such property as security for the advancements, provided the specific property or its proceeds on which the advancements were invested can be traced or identified." 37 C.J., 321, §28. The record here shows that all of the above elements were present. That the fund was in existence on September 1, is evident, because the stipulation of facts shows that on that day the first warrant was drawn in favor of Jones.

We think the cases of *American Agency & Inv. Co. v. Gregg,* 90 Colo. 142, 6 P. (2d) 1101, and *Mitchell v. Bowman,* 123 F. (2d) 445, are controlling in the determination of the issues in this case. In Mitchell v. Bowman, the U.S. Circuit Court of Appeals had before it a contract similar to the one entered into between Jones and Mitchell, and Jones, also a prominent figure in that case, attempted to assign all his fee, including Mitchell's share, to a Denver Bank. Mitchell sued Jones in the state court and had judgment. Jones was adjudicated a bankrupt, and the balance due from Adams county on Jones' contract as architect was paid into the registry of the bankruptcy court. The Court of Appeals held that Mitchell was entitled to the money, and, in so holding, cited and relied upon the Gregg case, supra, and *Clatworthy v. Ferguson,* 72 Colo. 259, 210 Pac. 693, and this regardless of the fact, as the opinion recites, that "the bank did not have actual notice of the interest of Mitchell in the fund at the time it acquired its assignment * * *."

Assuming, as counsel suggest, that the fund to which the assignment attached was not in existence at the time of the execution of the contract (*Clatworthy v. Ferguson, supra*), the fund was certainly in existence when the first warrant was drawn on September 1, 1938, as noted above, and there was ample money in the fund thereafter to discharge the bank's claim when on September 10th President Willey of the board received full information.

■ Counsel for the school district suggest that there was no consideration for the signing of Exhibit C-1 by Randall. The same consideration existed for that as for the contract for architectural services. It required no separate consideration, but was merely a consent to payment of the consideration through a particular channel. *Welch v. Mayer,* 4 Colo. App. 440, 445, 36 Pac. 613.

Counsel also argue that *Mitchell v. Bowman, supra,* and the Gregg case are not controlling, because in those cases "there was an assignment by the creditor himself," whereas, in this case the assignment was made by an employee. Technically, Mitchell designates himself in his contract with Jones as an employee, but by the same token the board is also charged with the notice of the division of the fees, and as a matter of equity, if not law, Mitchell was a creditor to the extent of his two-thirds interest in the fee. The complaint alleges that the school district was indebted to Mitchell, which, if established, would make him a creditor. The trial court found that Jones and Mitchell were partners, so, if Jones was a creditor, Mitchell also would be a creditor. We think the record supports the deductions for the purpose of this case. If Jones were here complaining about irregularity in connection with the assignment, we might have a different situation, but the school district is in no position to say that Mitchell was not a creditor.

■ 6. The language of the Jones-Mitchell contract is not positive as to whether Jones gave Mitchell the right to collect the fee. Paragraph 3 reads, in part: "The architect, Lester L. Jones, agrees that two-thirds of said fee will be remitted to the said Associated Consultants and one-third to himself." We construe this to mean that the school district should remit the two-thirds to Mitchell. Consequently Mitchell was authorized to collect at least that much, and assuming that Mitchell and Jones were partners, as the trial court held they

were, and which is not specifically argued or denied, each was authorized to act as the general agent of the firm. 47 C.J. 826, §290.

7. We see no good reason for changing the amount of the judgment, viz., $1,090.80. There seems to be no dispute regarding the amount of Jones' fee for preparing the working plans and specifications. It was $1,636.20. Of that, Mitchell was entitled to two-thirds for his services, to which amount the lien attached, the same being $1,090.80, the amount of the judgment, and if he has a legitimate claim to any of that fund he must look to the bank for payment.

The trial court summed up the situation rather aptly in denying the motion for a new trial in the following language: "Simply stated, the situation was that Jones collected not only what he was entitled to but the sum upon which Associated Consultants possessed an equitable lien, the rights to which they had assigned to the plaintiff, and that the defendant paid this amount to Jones after notice of the plaintiff's rights and the agreement of its secretary that it would protect them."

Most of the matter set out in the supplemental abstract was necessary to a proper understanding of the case; therefore, the cost thereof is taxed to the school district, together with the other costs in the case.

Judgment affirmed.

MR. JUSTICE BURKE and MR. JUSTICE ALTER concur.