## No. 22265.

FLEMING AND PATTRIDGE, FORMERLY FLEMING, MILLER AND PATTRIDGE *v.* HELEN M. SINGER, ADMINISTRATRIX OF THE ESTATE OF PALMER JULES 'SINGER, ALSO KNOWN AS P. JULES SINGER, ALSO KNOWN AS JULES SINGER, DECEASED.

(450 P.2d 635)

Decided February 17, 1969.     Rehearing denied March 10, 1969.

*En Banc.*

MR. JUSTICE PRINGLE delivered the opinion of the Court.

FLEMING AND PATTRIDGE, a law partnership referred to hereinafter as the claimant, filed a claim in the estate of P. Jules Singer for $3,700. It was allowed as a fifth class claim. In this writ of error, the claimant argues that the trial court should instead have allowed the

claim as a first class claim. Since the defendant in error does not dispute the validity of the claim, the only issue before us is whether it is of the first or the fifth class. See C.R.S. 1963, 153-12-2.

A brief summary of the facts will put this case in proper perspective. Nancy Montanino retained the claimant to represent her in her efforts to establish that she was the daughter of the deceased C. W. Thuringer, and that as his daughter she was entitled to share in his estate. Pursuant to the terms of a written contingent fee contract, the claimant was to take as its fee for professional services a percentage of Montanino's share of the estate. Deciding later to switch attorneys, she retained P. Jules Singer to proceed with the legal representation originally provided by the claimant. By this time, claimant had advanced certain costs, and had worked about 185 hours on the case. In consideration of certain payments, which represented the costs advanced, and certain purported assignments, the claimant released Montanino from any claim which it might have had against her under the contingent fee contract. The release was drafted in the form of a letter from the claimant to Montanino and Singer. Since it is the basis of this dispute, its material portions are set out verbatim. "In consideration of your payment to us of the sum of $254.74, representing costs advanced by us in connection with the Estate of C. W. Thuringer, deceased, and in further consideration of the following assignment to us:

"1. Assignment of $3700.00 from Nancy Eva Montanino, from any sums received by her from the settlement of the Estate of the said C. W. Thuringer.

"2. Assignment from Jules Singer of the sum of $3700.00 from any fees received by him in representing Nancy Eva Montanino in her claim as a beneficiary of said Estate of C. W. Thuringer,

"We hereby agree to release the said Nancy Eva Montanino from any and all claims arising under the con-

tingent fee contract executed by her on May 16, 1960. "It is understood that the said Nancy Eva Montanino shall execute a proper Assignment to be submitted to the Administrator or Administrators of said Estate, or successors.

"It is further understood that in the event the said Nancy Eva Montanino receives nothing as a beneficiary of said Estate, then we shall receive nothing as our consideration in releasing this contract."

No assignment as such was ever actually executed by Singer.

Montanino eventually received about $200,000 in settlement of her claim against the Thuringer estate, and Singer became entitled to an attorney's fee of $30,000. Of the latter sum, all but $8,967.60 had been paid to Singer before his death as the result of an automobile accident. The Administratrix of his estate inventoried the fee due from Montanino as an account receivable in the amount of $8,967.60. Because it had received no payment from Singer under the letter agreement, the claimant filed its claim for $3,700 against Singer's estate. The $3,700 owed by Montanino to the claimant has been paid, and is not an issue in this case.

Briefly, the claimant argues that the account receivable was owed by Montanino to Singer, who held it in either an express or implied trust for the benefit of the claimant. Therefore, according to its argument, the claimant is entitled to a first class claim against the estate under the terms of C.R.S. 1963, 153-12-2. We do not agree and therefore affirm the judgment of the trial court.

The provisions of the purported assignment require close analysis. Since, as we have stated, Montanino has already paid the claimant, paragraph No. 1 of the instrument is no longer directly in issue. Paragraph No. 2 contains an agreement purporting to assign to the claimant "$3700.00 from any fees received by him in representing Nancy Montanino." The last quoted paragraph

in the instrument makes it clear that the $3700 is to be paid only if she is successful in her claim as an heir of the estate of C. W. Thuringer.

Claimant argues in part that the instrument constitutes a partial assignment of a chose in action. Singer, who would be the partial assignor, according to the claimant's theory of the case, became a trustee of any moneys which he might earn up to the amount of $3700 for successfully representing Montanino. On the other hand, the Administratrix for Singer's estate contends that Singer and the claimant intended to create only a contractual obligation to pay a debt out of a fund which he expects to obtain in the future. See generally Bogert, Trust and Trustees § 19 (2d ed.) [hereinafter cited as Bogert].

■ C.R.S. 1963, 153-12-2(1)(b) provides that "personal property held by or in the possession of the deceased person as fiduciary or trustee shall comprise the first class." Modern authority teaches that partial assignment of a chose in action does not in and of itself render an assignor a trustee for the assignee. It does not, as a matter of law, necessarily create a fiduciary relationship between the partial assignor and the partial assignee. Restatement (Second) of Trusts § 16, and Comment b thereunder; Bogert, *supra* § 25. Consequently, even if we assume, *arguendo*, that the instrument constitutes a partial assignment, we conclude that Singer was not by reason of that fact alone a "fiduciary or trustee" within the meaning of the statute.

■■ In particular, we point out that Singer purported to assign "$3700.00 from any fees received." On its face, the instrument appears to create only a contractual obligation between Singer and the claimant. We see nothing in the instrument to indicate that Singer assumed the legal status and obligations of a fiduciary or trustee. There is no requirement, for example, that Singer segregate funds to the extent of $3,700. Nor can a fiduciary relationship be lightly implied here. Both

Singer and the claimant were attorneys, and both must have been aware that in Colorado specificity of language or conduct is required to prove the essential elements of an express trust. See *Morgan v. Wright,* 156 Colo. 411, 399 P.2d 788. Had they intended a fiduciary relationship, they would have used language which speaks of more than the debtor-creditor relationship evident here.

We cannot agree with the claimant's contention that it had an equitable interest in the account receivable. In support of its contention, the claimant cites and relies heavily on *Wilson v. Kirby,* 88 Ill. 566. That case, however, is readily distinguishable, for it involved a contract which required Wilson to purchase cattle for $50,000, and then to deliver them to Alexander, who was to ready them for market, and then return them to Wilson, who was at all times to retain ownership of the cattle. Instead of returning the cattle to Wilson to sell, Alexander sold them himself. At his death, only $20,000 could be traced as the proceeds of the sale. The Illinois court recognized that the sum represented the cattle, which were Wilson's under the terms of the contract, and held that the sum was received "in trust" for Wilson. In doing so, the court applied equitable principles to effectuate the clearly expressed intention of the parties that Wilson should retain the ownership of cattle which had, in effect, been bailed to Alexander.

The Colorado cases which the claimant cites to support his contention that the instrument constitutes an equitable lien are not in point. In *American Agency & Investment Co. v. Gregg,* 90 Colo. 142, 6 P.2d 1101, for example, the Court recognized it to be the general rule that an agreement to pay out of a particular fund was not an equitable assignment. It then went on to graft an exception to the rule where the fund is created solely by the effort of the promisee and the contract involved specifically recognized the ownership of the fund in the promisee. Such circumstances are not present here.

■ We conclude that no part of the account receivable here can be considered the claimant's personal property. Instead, it appears that Singer obligated himself only to pay a debt from a sum which he expected to receive in the future. See Bogert, *supra*, § 19, and cases therein cited. The claimant had neither a legal nor an equitable interest in the fee which was to come from the C. W. Thuringer estate.

In reaching the foregoing conclusion, we are aware that the trial court was of the opinion that Singer made a valid equitable assignment. At another point the trial court stated that there may have been an implied trust relationship. Nevertheless, the trial court concluded that C.R.S. 1963, 153-12-2(1)(b) did not include implied trusts and therefore ruled that the claim was not within the first class. We reserve opinion on the soundness of his observations on the cited statute. Our conclusion is, therefore, that although the trial court cited the wrong reason for his judgment, the law requires the result obtained.

The judgment is affirmed.

Mr. Chief Justice McWilliams concurs in the result.

Mr. Chief Justice McWilliams concurring in the result:

I concur in the result reached by this Court but do so on different grounds. Mr. Justice Pringle, speaking for the Court, concludes by stating that "although the trial court cited the wrong reason for his judgment, the law requires the result obtained." In my view of the matter the trial court cited the "right reason" for his judgment and I would affirm the judgment on that basis.

It is my view, as it was the trial court's view, that:

(1) the General Assembly by amending in 1957 that which now appears as C.R.S. 1963, 153-12-2 did not change the rule announced in *McCutchen v. Osborne*, 61 Colo. 408, 158 P. 136;

(2) the rule announced by us in *McCutchen*, which

rule incidentally was thereafter recognized and approved in *Chavez v. Gallup,* 77 Colo. 141, 235 P. 345 and *California Ins. Co. v. Dudley,* 69 Colo. 560, 195 P. 649, is still then the law in Colorado and hence the word "trustee," as used in C.R.S. '53, 152-12-2(1), includes only those trustees holding money under a technical (express) or special trust, as opposed to an implied trust;

(3) the claim of Fleming and Pattridge does *not* arise out of any express or technical trust relationship between them and the decedent, and therefore the claim is not of the first class, but only of the fifth class.