518 P.2d 850 (1974)
David R. BAROCAS, Plaintiff-Appellee,
v.
BOHEMIA IMPORT CO., INC., Defendant,
William Iselin & Co., Inc., Intervenor-Appellant.
No. 73-007.
Colorado Court of Appeals, Div. II.
January 15, 1974.
*851 Meer, Wolf & Slatkin, Walter Slatkin, Denver, for plaintiff-appellee.
Isaacson, Rosenbaum, Spiegleman & Friedman, P.C., Gary A. Woods, Denver, for intervenor-appellant.
Selected for Official Publication.
ENOCH, Judge.
William Iselin & Co., Inc., intervenor in this action, appeals from a judgment denying its motion to dissolve a writ of attachment. We reverse.
Suit was filed by plaintiff-appellee David Barocas against defendant Bohemia Import, a New York corporation, for payment of $5,000 in commissions allegedly earned by plaintiff in connection with the sale of goods for defendant. Plaintiff's motion for a writ of garnishment in aid of attachment against two Colorado corporations with accounts payable to defendant was granted. These garnishees are not parties to this appeal. In addition, on stipulation of the parties, the trial court granted a motion for intervention filed by William Iselin & Co., a New York corporation. Intervenor then filed a motion to dissolve the writ of attachment, alleging that it held a perfected security interest in defendant's accounts receivable under Article 9 of the Uniform Commercial Code. This motion was denied on the grounds that plaintiff held an equitable lien in accounts *852 receivable which were created by his efforts as a salesman, and that the equitable lien took priority over intervenor's asserted interest in the accounts. A default judgment in favor of plaintiff was subsequently entered against defendant, and intervenor appeals.
Intervenor contends that the trial court erred in determining that plaintiff held an equitable lien in the garnished accounts. We agree.
Equitable liens arise only where there is evidence that the parties intended to charge a particular property or fund as security for an obligation. School District No. 3 v. Central Savings Bank & Trust Co., 113 Colo. 487, 159 P.2d 361; Valley State Bank v. Dean, 97 Colo. 151, 47 P.2d 924; Clatworthy v. Ferguson 72 Colo. 259, 210 P. 693. See American Investors Life Insurance Co. v. Green Shield Plan, Inc., 145 Colo. 188, 358 P.2d 473. This basic requirement stems from the nature of the remedy provided through the theory of equitable liens.
"The doctrine of `equitable liens'. . . was introduced for the sole purpose of furnishing a ground for the specific remedies which equity confers, operating upon particular identified property, instead of the general pecuniary recoveries granted by courts of law." 4 J. Pomeroy, Equity Jurisprudence § 1234 at 695.
Thus, an equitable lien permits a party to have specified property applied to the payment of a particular debt.
The record does not contain evidence necessary to support the finding that an equitable lien on the accounts receivable existed in plaintiff's favor. There is no allegation in plaintiff's complaint nor any evidence in affidavits submitted to the court of an intent that the accounts created by plaintiff were to be specifically chargeable for plaintiff's compensation. Plaintiff never informed the court of the precise nature of his contract for services. He alleged only that he served as a sales representative for defendant and that defendant "has agreed to pay to plaintiff commissions on all sales made by the plaintiff." Plaintiff does not allege that he was entitled to look to the accounts receivable created by him as the particular source of his compensation. Clearly, there is insufficient evidence from which a court could determine that the parties had agreed that the accounts receivable were specially subject to plaintiff's claims for compensation.
Plaintiff argues that the intent to create a particular fund from which he could seek recompense can be implied from the facts that he created the accounts in question through his own efforts and that his compensation was agreed to be a percentage of the sales he made. However, these circumstances, without more, are insufficient to permit the imposition of an equitable lien. Plaintiff cites Mitchell v. Bowman, 123 F.2d 445 (10th Cir.) in which the court stated:
"It is the law in Colorado that a contract which constitutes a promise to pay one for services rendered out of a fund created in whole or in part by the efforts of the promisee creates a lien on the fund when it comes into existence, and that equity will enforce such a lien."
However, the Mitchell case involved a fee-splitting arrangement and the evidence showed that, by express agreement between the parties, "Mitchell's compensation was contingent and was payable only out of the fund which he was to assist in bringing into existence." (Emphasis added.) In the case at hand, plaintiff admitted that his payments and commissions were not dependent on collection of the accounts receivable created by his sales. If the accounts were never collected by defendant, plaintiff was still entitled to his commission. Plaintiff is a general creditor of defendant, entitled to look to all of the assets of the corporation in enforcing his claim for compensation.
In the absence of an agreement between the parties, a court may impose an *853 equitable lien, in the nature of a constructive trust, when considerations of right and justice demand. However, the imposition of such a lien would not be appropriate in this case. There is no allegation that defendant is insolvent, nor does plaintiff present any special circumstances compelling the intervention of equity. Where plaintiff had a plain and adequate remedy at law, equity will not intervene. American Investors Life Insurance Co., supra. Plaintiff in this case obtained a default judgment against defendant, which he can enforce in the same manner as any other judgment creditor.
Since we find that plaintiff did not have an equitable lien, it is unnecessary to determine the question raised by intervenor concerning the validity or priority of such liens after enactment of the Uniform Commercial Code.
The remaining question to be decided is whether intervenor's security interest in the accounts receivable is superior to plaintiff's interest as a lien creditor under the writ of attachment.[1] The facts before us relating to this issue, as evidenced by the security agreement and financing statement, are uncontroverted. Therefore, the priority of the liens is a matter of law and is an appropriate subject for determination by this court. See People v. Painless Parker Dentist, 85 Colo. 304, 275 P. 928, cert. denied, 280 U.S. 566, 50 S.Ct. 25, 74 L.Ed. 620.
Section 9-103(1) of the Uniform Commercial Code, McKinney's Consol. Laws, c. 38, as enacted in both Colorado and New York, states:
"If the office where the assignor of accounts or contract rights keeps his records concerning them is in this state, the validity and perfection of a security interest therein and the possibility and effect of proper filing is governed by this Article; otherwise by the law (including the conflict of laws rules) of the jurisdiction where such office is located." C.R.S.1963, XXX-X-XXX(1) and N.Y.U.C.C. § 9-103(1) (McKinney's Consol.Laws, c. 38, 1964).
Defendant Bohemia's only office is located in New York and therefore the requirements of the Uniform Commercial Code as enacted by New York determine the validity and perfection of the intervenor's security interest in defendant's accounts receivable.
The New York Uniform Commercial Code provides that "[a] security interest is perfected when it has attached and when all the applicable steps required for perfection have been taken." N.Y.U.C.C. § 9-303 (McKinney's Consol.Laws, c. 38, 1964). Iselin's security interest in Bohemia's accounts attached as soon as the accounts receivable came into existence. See N.Y.U.C.C. § 9-204(1) (McKinney's Consol.Laws, c. 38, 1964). Further, Iselin complied with the steps required by the Uniform Commercial Code to perfect its security interest in Bohemia's accounts receivable, all of which had been assigned to it under the security agreement. This perfected security interest takes priority over plaintiff's interest as a lien creditor in the two accounts which were attached. See N.Y.U.C.C. §§ 9-301(1)(b) and 9-311 (McKinney's Consol.Laws, c. 38, 1964); J. White & R. Summers, Uniform Commercial Code 901-02 (1972).
The order of the trial court denying intervenor's motion to dissolve the writ of attachment is reversed and remanded with directions to grant the motion and dissolve the writ.
COYTE and PIERCE, JJ., concur.
NOTES
[1] N.Y.U.C.C. § 9-301 (McKinney's Consol. Laws, c. 38, 1964) defines a lien creditor as "a creditor who has acquired a lien on the property by attachment, levy or the like. . . ."