**Louis F. CORIELL, Plaintiff-Appellant,**

v.

**W. H. HUDSON, Defendant-Appellee.**

**No. 76–1498.**

United States Court of Appeals,
Tenth Circuit.

Submitted July 20, 1977.

Decided Oct. 7, 1977.

---

W. C. Kettelkamp, Jr., Pueblo, Colo., for plaintiff-appellant.

Hal Simmons, Albuquerque, N. M., for defendant-appellee.

Before McWILLIAMS, DOYLE and MARKEY, JJ.*

MARKEY, Chief Judge.

Appeal from a judgment of the United States District Court for the District of Colorado denying plaintiff an accounting for alleged fraudulent conversion of his property. We affirm.

### Background

Early in 1968, appellant Coriell, a resident of New Mexico, owned an undivided half interest in a building complex in Albuquerque, New Mexico, with one Fred Dunivan, with whom he had engaged in prior business ventures. Coriell and Dunivan

* Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

traded the complex for a Colorado ranch owned by Davis. Legal title to the ranch was conveyed by Davis to Dunivan's daughter in March 1968, with the understanding that she would deed one half to Coriell. Before Coriell received his deed, Miller agreed with Coriell and Dunivan to invest $108,000, to be put in escrow and used for development of the ranch. In November of 1968, Dunivan's daughter conveyed a one-third interest in the ranch to Coriell. About the time of the Miller agreement, defendant Hudson independently entered into an agreement with Dunivan and Miller concerning gold coins. The coins failed to materialize, resulting in a $108,000 indebtedness of Dunivan and Miller to Hudson, secured by a November 22, 1968 mortgage on Miller and Dunivan's two-thirds interest in the ranch. When various schemes for paying their debt failed, Dunivan and Miller decided to sell the ranch and the question of Coriell's interest arose. Hudson was told that Coriell's interest would be taken care of by a note and that Coriell's power of attorney would be secured.

Coriell took no active interest in the property, though he understood that it was to be developed and sold primarily by Miller. Believing it beneficial to Miller's efforts, Coriell gave a May 7, 1969 power of attorney to Miller, receiving as security an $80,000 demand note from Miller and Dunivan.

With Coriell's power of attorney, Miller and Dunivan sold the ranch and satisfied part of their debt to Hudson. Sale proceeds were used to redeem a Deed of Trust held by the Federal Land Bank and to pay Hudson, with any excess going to Miller and Dunivan.

The sale was made piecemeal, the ranch having been divided into eight tracts. Miller executed conveyances for the first six tracts. Thereafter Miller said he would execute no more conveyances and Hudson decided to assume that function. On April 13, 1970, Miller executed a general warranty deed, for himself and as attorney-in-fact for Dunivan and Coriell, running to "W. RINEHART MILLER and W. H. HUDSON, TRUSTEES for W. RINEHART MILLER, FRED W. DUNIVAN, LOUIS F. CORIELL and W. H. HUDSON." Pursuant to that deed, the last two tracts were sold.

On May 26, 1970, Coriell, having heard nothing regarding the ranch, revoked his power of attorney to Miller. In August of 1971, Coriell learned that the ranch had been sold. From the real estate agent who handled the sales, he first learned of Hudson's involvement. In December of 1971, Coriell brought suit against Miller and Dunivan on the $80,000 demand note and was awarded judgment. In August of 1974, he brought suit against Miller and Hudson in the U. S. District Court for the District of Colorado, alleging breach of duty as trustees. Miller was dismissed on the basis of the prior judgment against him. Trial was had before the court sitting without a jury, and judgment was entered for Hudson.

### Issues

The issues presented on appeal are: (1) whether, as a matter of law, the word "trustees" in the warranty deed created an express trust for the benefit of Coriell, and (2) whether, as a matter of equity, there was created a constructive trust in favor of Coriell on any part of the ranch or sale proceeds owned or possessed by Hudson.

### OPINION

#### (1) *Express Trust*

■ Under Colorado law, applicable in this diversity action because Colorado is the situs of the claimed trust res, the elements necessary to create an express trust are: (1) the settlor's capacity to create a trust; (2) his intention to do so; (3) a declaration of trust or a present disposition of the res; (4) an identifiable trust res; (5) a trustee; and (6) identifiable beneficiaries. *In re Estate of Granberry*, 30 Colo.App. 590, 498 P.2d 960 at 963 (1972). The parties have argued only with respect to the element of intent.

■ Coriell having no knowledge of the transaction until long after it occurred, the material intent is that of Miller, acting for Coriell pursuant to the power of attorney. The only evidence of record touching Mil-

ler's intent vis-a-vis "trustees," arises indirectly in the testimony of Hudson, who testified that the word was chosen to indicate that Hudson's interest was limited to the amount of the debt owed him by Miller and Dunivan. Coriell concedes that Hudson believed any remaining interest of Coriell in the ranch was to be taken care of by Miller and Dunivan through an independent agreement with Coriell. The parties executing the deed thus had no intent to create a trust running in Coriell's favor.

Hudson testified that his attorneys recommended the language of the deed. In *Fleming and Pattridge v. Singer*, 168 Colo. 195, 450 P.2d 635 (1969), the parties between whom a fiduciary relationship was alleged were attorneys. There it was said: "both [parties] must have been aware that in Colorado specificity of language or conduct is required to prove the essential elements of an express trust." [Citation omitted.] "Had they intended a fiduciary relationship, they would have used language which speaks of more than the debtor-creditor relationship evident here." 450 P.2d at 637. Had a fiduciary relationship been intended here, Hudson's attorneys could have been expected to have used language adequate for its creation.

■ Under the Colorado statute, CRS 16, § 38–30–108, use of "trustees" in a deed is not itself evidence that grantees were intended to take in a representative capacity, i. e., as trustees in the legal sense.[1] In *Beatty v. Fellows*, 101 Colo. 466, 74 P.2d 677 (1937), a case involving a third party, the Colorado Supreme Court held that addition of "trustee" to the grantee's name signified nothing, in view of 1935 CSA chapt. 40, § 9, an early predecessor of the present statute, and that the word was "purely description of the person." In *Board of County Commissioners v. Blanning*, 29 Colo.App. 61, 479 P.2d 404 (1970), the Colorado Court of Appeals said that, under CRS 1963, 118–1–8,[2] the most recent predecessor to the present statute, an instrument designating a grantee as trustee is not evidence of a representative capacity of the grantee, and that failure to comply with the requirements of the statute resulted in the grantee taking both legal and equitable title to the property.

■ So far as is material on this appeal, CRS 1963, 118–1–8 is identical to the present statute, CRS 16, § 38–30–108. The description here of the grantees as "trustees" is thus to be considered "a description of the person only," and the presence of "trustees" in the deed to Miller and Hudson did not give rise to an express trust in favor of Coriell.

1. The full text of CRS 16, § 38–30–108 is:

38–30–108. Conveyances in trust to named beneficiary. All instruments conveying real estate, or interests therein, in which the grantee is described as trustee, agent, conservator, executor, administrator, or attorney-in-fact, or in any other representative capacity, said instruments shall also name the beneficiary so represented *and define the trust or other agreement under which the grantee is acting*, or refer, by proper description to book, page, document number, or file to an instrument, order, decree, or other writing which is of public record in the county in which the land so conveyed is located in which such matters appear; otherwise the description of a grantee in any such representative capacity in such instruments of conveyance shall be considered and held a description of the person only and shall not be notice of a trust or other representative capacity of such grantee. (Emphasis added.)

2. The full text of CRS 1963, 118–1–8 is:

118–1–8. Conveyances in trust to name[d] beneficiary.—All instruments conveying real estate, or interests therein, in which the grantee is described as trustee, agent, conservator, executor, administrator, attorney in fact, or as in any other representative capacity, said instruments of conveyance shall also name the beneficiary or beneficiaries so represented and define the trust or other agreement under which the grantee is acting, or refer by proper description to book, page, document number or file, to an instrument, order, decree or other writing, which is of public record in the county in which the land so conveyed is located, in which such matters shall appear; otherwise the description of a grantee in any representative capacity as aforesaid in such instruments of conveyance shall be considered and held a description of the person, only, and shall not be notice of a trust or other representative capacity of such grantee.

#### (2) Constructive Trust

■ Coriell contends that, by reason of the deed, Hudson became a constructive trustee with a fiduciary duty to Coriell, which Hudson breached when he sold the last two tracts and fraudulently converted the proceeds to his own use. In *Botkin v. Pyle*, 91 Colo. 221, 14 P.2d 187 (1932), however, it was said:

> A constructive trust is one that arises when a person, clothed with some fiduciary character, by fraud or otherwise gains some advantage to himself. . . . Constructive trusts are such as are raised by equity in respect of property which had been acquired by fraud, or where, though acquired originally without fraud, it is against equity that it should be retained by him who holds it.

Nothing of record evidences that Hudson had a fiduciary or representative relationship, as trustee or otherwise, with Coriell.

■ Coriell next contends that a constructive trust was created by Hudson's knowledge of Coriell's one-third interest in the ranch. The general rule, followed in Colorado, is that when trust property has been misapplied, it may be followed and subjected to use of the beneficiary *unless* it has been acquired by an innocent purchaser for value without notice of existence of the trust. *Cox v. Metropolitan State Bank, Inc.*, 138 Colo. 576, 336 P.2d 742 at 747 (1959). The requisites for innocent purchase are: (1) payment of value, (2) lack of notice, and (3) good faith. *Sterling National Bank v. Fischer*, 75 Colo. 371, 226 P. 146 (1924). It is clear, from the district court's unchallenged finding, that there was payment of value, the sale being made in satisfaction of Miller and Dunivan's antecedent debt to Hudson. Coriell's contention is that Hudson did not lack notice of Coriell's interest in the ranch, but it is notice of the existence of a trust that is material and there is no evidence of a trust relationship of Coriell with Miller and Dunivan of which Hudson could have had notice. It is also clear that Hudson acted in good faith.

■ The district court found, and we agree, that the record is devoid of evidence that Hudson was involved in any fraud. As mentioned, it is conceded that Hudson believed Coriell's interest had been compensated for independently. Coriell does not allege that his power of attorney, which made the deed possible, was fraudulently obtained, so as to raise a constructive trust relationship between himself and Miller.[3] Nor does Coriell allege that a trust of any kind arose in any of his dealings with Miller and Dunivan, which Hudson knew or should have known about. The power of attorney, being unlimited and expressly authorizing Miller to sell the ranch, far from imposing upon Hudson a duty to inquire, would allay any possible concern over Coriell's interest. Because Hudson acquired the ranch, therefore, without notice of existence of a trust, express or constructive, and otherwise fulfilled the requisites to innocent purchase, Coriell cannot follow the ranch into Hudson's hands.

As was said in *Botkin, supra* :

> to make, execute, acknowledge and deliver good and sufficient conveyances for the same upon such consideration and with any such clauses, covenants and agreements to be therein contained as my said attorney shall think fit and convenient; giving and granting unto my said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully, to all intents and purposes, as I might or could do if personally present, hereby ratifying and confirming whatsoever my said attorney shall and may do by virtue hereof in the premises. . . .

---

**3.** The power of attorney reads in relevant part:
KNOW ALL MEN BY THESE PRESENTS:
That I, Louis F. Coriell, have made, constituted and appointed, and by these presents do make, constitute and appoint W. RINEHART MILLER, of Nueces County, Texas, my true and lawful attorney, for me and in my name, place and stead to enter upon and take possession of the following described real estate in Fremont County, Colorado, to wit:
[description omitted]
to contract to sell and convey the same or any part thereof, to any grantee whomsoever, for such sum, on such terms and with such agreements as to him shall seem proper;

It may be said that Pyle [plaintiff] relied too implicitly upon the statements of Botkin [defendant's husband], . . . and that his representations amounted to fraud and deceit, and that Pyle was thereby misled to his damage; but, if this be so, Pyle must look to the perpetrator of the fraud for relief, and he is not entitled to be made whole at the expense of one who was in no manner responsible for his loss. 14 P.2d at 193.

Coriell is here in the position of Pyle. Hudson was "in no manner responsible for his [Coriell's] loss." If, as the district court found, both were innocent victims of fraud by others, it is not from Hudson that Coriell may seek relief.

There being no basis in equity or law for creation of a trust, the judgment of the district court is affirmed.