307 F.2d 888
 BUSHMAN CONSTRUCTION COMPANY, a Missouri corporation, Appellant,
v.
W. S. CONNER, an individual doing business as W. S. Conner Construction Company; and R. P. R. Construction Co., an Arizona corporation, Appellees.
 No. 6931.
 United States Court of Appeals Tenth Circuit.
 August 28, 1962.
 Rehearing Denied September 27, 1962.
 
 Laurence W. DeMuth, Jr., of Akolt, Turnquist, Shepherd & Dick, Denver, Colo., and Richard U. Simon, of Simon & Simon, Fort Worth, Tex., for appellant.
 C. Blake Hiester and Bill Earl Tom, of Hiester, Tannor & Clanahan, Denver, Colo., for appellees R. P. R. Construction Company.
 Before PHILLIPS, PICKETT and and LEWIS, Circuit Judges.
 PICKETT, Circuit Judge.
 
 
 1
 This action by Bushman Construction Company arose out of the failure of the defendant R. P. R. Construction Company, a subcontractor on a military housing project at the United States Air Force Academy, Colorado Springs, Colorado, to deliver, pursuant to a written direction of proceeds, money due to one of its subcontractors. Bushman appeals from a summary judgment in favor of R. P. R.
 
 
 2
 The record, consisting of the complaint, affidavits, depositions, and evidence introduced in support of an application for an injunction, discloses that R. P. R., by subcontract, agreed to perform a portion of the prime contract requirements in the construction of the housing project at the Air Force Academy. In turn, R. P. R. negotiated with the defendant Conner to do a portion of its work. These parties reached an agreement, and R. P. R. delivered to Conner a letter of intent to award him a portion of its work for a consideration of $2,184,600. Because Conner needed financial assistance, and was unable to furnish the required performance and payment bonds, the letter of intent was presented to Bushman, and, after considerable discussion, a participating arrangement was worked out between Conner and Bushman. In substance, this agreement required Bushman to pay all bills necessary to complete the work, establish a drawing account of $1,000 per month for Conner, and furnish the necessary bonds. Conner agreed to assign all payments to Bushman, and the profits were to be equally divided. On May 22, 1958, Conner delivered the bonds to R. P. R., which were guaranteed by Bushman, and the subcontract involved here was executed.[1] On June 3, 1958, the joint adventure arrangement was reduced to writing.[2]
 
 
 3
 Prior to the execution of the written agreement between Conner and Bushman, Conner furnished to R. P. R. an irrevocable direction for the payment of proceeds which provided that all money due to Conner under the subcontract should be forwarded to the Mechanics Bank, St. Joseph, Missouri.[3] In addition to the direction for the payment of proceeds, Conner executed his power of attorney authorizing an officer of the Mechanics Bank to endorse the checks so forwarded and credit the proceeds to Bushman's account. As security for the performance of Conner's subcontract, Bushman's name and credit were used. It paid costs of operation in excess of $1,900,000, and received from R. P. R. $1,463,780.05 in accordance with the procedure outlined.
 
 
 4
 The record indicates that early in August, 1959 Bushman and Conner had a disagreement. Bushman, having advanced approximately one-half million dollars more than it had received, refused to furnish more money for the subcontract until additional progress payments were made by R. P. R. Conner thereupon undertook to terminate the joint adventure and revoke the authority of the officer of the Mechanics Bank to endorse checks. He advised R. P. R. that in the future all checks should bear the personal endorsement of W. S. Conner, and gave notice to R. P. R. that the direction to deliver the proceeds due on the contract to the bank was withdrawn. It is alleged that R. P. R., acting in cooperation with Conner, and with full knowledge of Bushman's interest, stopped payment on a $150,000 check which had been delivered to the bank, endorsed and deposited according to the preexisting agreement. Thereafter R. P. R. refused to make further payments to Bushman, and later payments were made directly to Conner or jointly to him and others. It is also alleged that disbursements were made by R. P. R. to Conner during the pendency of this action, "and with full knowledge of the contentions of Plaintiff."
 
 
 5
 In the first amended complaint Bushman alleges, in its first claim for relief, that there was a breach of Subcontract No. 581 by R. P. R. and a breach of a specific promise to pay Bushman $150,000 made to induce Bushman's continued participation, and it asks for recovery of the balance due on the subcontract as damages. In its second claim for relief recovery is sought on quantum meruit. The allegation is that certain sums were paid for the use and benefit of R. P. R. and Conner, and the relief prayed for is the reasonable value of the services rendered by Bushman or, alternatively, for restitution of the amounts paid on behalf of the defendants. In the third claim for relief Bushman alleges a conspiracy between R. P. R. and Conner to deprive it of the benefit of the joint adventure and defraud it of amounts previously expended. The allegations in this claim for relief could be construed as alleging a scheme to defraud Bushman by inducing it to advance funds for the performance of the subcontract with the intent to stop payments to Bushman after it had advanced substantially more than had been paid to it.[4] Apparently R. P. R. takes the position that it knew nothing of the Bushman-Conner arrangement and owed no duty to Bushman.
 
 
 6
 In granting the motion for summary judgment the trial court held that the "Direction of Proceeds" was an unambiguous instrument, complete on its face, which could not be altered or explained by parol evidence. The court also held that the instrument was not an assignment, and that there was no contractual relationship between R. P. R. and Bushman.[5] The effect of the court's conclusion is that Bushman could not sue on a claim for relief for breach of Subcontract No. 581, and that since no express contract existed, no contract could be implied between R. P. R. and Bushman. As to the third claim for relief, which was not mentioned by the defendant in its motion, the court dismissed it on the theory that no cause of action would lie for conspiracy to breach a contract which did not exist.
 
 
 7
 Rule 56(c), Fed.R.Civ.P., 28 U.S.C.A., provides that a motion for summary judgment should be granted "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Standards for the application of this rule have been thoroughly developed by this court. E. g., Atkinson v. Jory, 10 Cir., 292 F.2d 169; United States v. Kansas Gas & Elec. Co., 10 Cir., 287 F.2d 601; McCollar v. Euler, 10 Cir., 286 F.2d 327; Champlin v. Oklahoma Furniture Mfg. Co., 10 Cir., 269 F.2d 918, 74 A.L.R.2d 978; Alaniz v. United States, 10 Cir., 257 F.2d 108; James v. Honaker Drilling, Inc., 10 Cir., 254 F.2d 702; Zampos v. United States Smelting, Ref. and Mining Co., 10 Cir., 206 F.2d 171. While it is the duty of the trial court to grant a motion for summary judgment in an appropriate case, the relief contemplated by Rule 56 is drastic, and should be applied with caution to the end that the litigants will have a trial on bona fide factual disputes. Under the rule no margin exists for the disposition of factual issues, and it does not serve as a substitute for a trial of the case nor require the parties to dispose of litigation through the use of affidavits. The pleadings are to be construed liberally in favor of the party against whom the motion is made, but the court may pierce the pleadings, and determine from the depositions, admissions and affidavits, if any, in the record whether material issues of fact actually exist. If, after such scrutiny, any issue as to a material fact dispositive of right or duty remains the case is not ripe for disposition by summary judgment, and the parties are entitled to a trial.
 
 
 8
 In the instant case the parties agree that there was a joint adventure between Bushman and Conner. As a general proposition, the substantive law of partnerships is applicable to joint adventures. Taylor v. Brindley, 10 Cir., 164 F.2d 235; Goss v. Lanin, 170 Iowa 57, 152 N.W. 43; State ex rel. Crane Co. v. Stokke, 65 S.D. 207, 272 N.W. 811, 110 A.L.R. 761; 48 C.J.S. Joint Adventures § 1 b(6) (1947); 30 Am.Jur. Joint Adventures § 4 (1958). The application of partnership law invokes agency rules since a partner is the agent for the other partners, and the only significant difference in a joint adventure is that one joint adventurer may act for the others only in matters relating to the object for which the joint adventure was formed. While the Colorado Supreme Court has not had occasion to specifically pass upon the subject, it is unlikely that a view contrary to these generally accepted principles would be taken. See Lindsay v. Marcus, 137 Colo. 336, 325 P.2d 267. Until a joint adventure is terminated a party to it cannot be excluded from an interest in the property of the venture without his consent. Lindsay v. Marcus, supra; Smaller v. Leach, 136 Colo. 297, 316 P.2d 1030, 70 A.L.R.2d 891, cert. denied 356 U.S. 936, 78 S.Ct. 777, 2 L.Ed.2d 812; Kincaid v. Miller, 129 Colo. 552, 272 P.2d 276.
 
 
 9
 These concepts are conceded by R. P. R., but it insists that the record conclusively shows that the joint adventure between Conner and Bushman was not formed until after its subcontract with Conner, and consequently there could be no contractual relationship between R. P. R. and Bushman. There is a sharp conflict between the parties as to the date when the joint adventure was entered into. R. P. R., of course, relies upon the date of the written agreement. Bushman, on the other hand, points to numerous facts indicated by the record to show that the joint adventure was formed prior to the subcontract between R. P. R. Construction Company and W. S. Conner Construction Company.[6] The date of the formation of the joint adventure is a material fact. If the joint adventure was formed prior to the time that Conner entered into the subcontract with R. P. R., then Conner may have contracted on behalf of the joint adventure. This would mean that a contractual relationship did exist between Bushman, as a member of the joint adventure, and R. P. R., contrary to the conclusion reached by the trial court in granting the motion for summary judgment. If so, Bushman would be entitled to bring an action for the breach of Subcontract No. 581 even though R. P. R. did not know of Bushman's relationship with Conner. First Nat'l Bank v. Federal Reserve Bank, 8 Cir., 6 F.2d 339; Sigel-Campion Live Stock Comm. Co. v. Davis, 69 Colo. 511, 194 P. 468; Restatement, Agency 2d § 302 (1958).
 
 
 10
 R. P. R. would, however, be entitled to deal with Conner as though the latter were the principal rather than an agent until informed of the joint adventure, and would incur no liability to Bushman by so doing. There are further conflicts between the parties on the questions of whether R. P. R. was notified or knew of the relationship between Bushman and Conner, and, if so, when the notice was given or the knowledge acquired. Since R. P. R. would not be entitled to deal with Conner as a principal after notice was given or knowledge was obtained, the facts of notice, or knowledge, and the date thereof are material. R. P. R. would not be entitled to discharge its obligations under the subcontract by payment to Conner once it knew of the terms of the joint adventure. Restatement, Agency 2d § 302, Illustration 4 (1958). Bushman asserts that R. P. R. at least had knowledge of the terms of the joint adventure and Bushman's rights thereunder after this action was brought, and points out that substantial payments were made to Conner after that date.
 
 
 11
 In addition, the question of R. P. R.'s knowledge of Bushman's rights to the progress payments may be material under the equitable lien theory of Mitchell v. Bowman, 10 Cir., 123 F.2d 445, and School Dist. No. 3, Clear Creek County v. Central Sav. Bank & Trust Co., 113 Colo. 487, 159 P.2d 361. In substance, these cases hold that one who is to be compensated for his services out of a particular fund which his services are instrumental in creating acquires an equitable lien against the fund for the amount of his compensation. While this proposition is not alleged specifically, Bushman may be entitled to establish the equitable lien theory contemplated in these two cases under its second claim for relief. Their reasoning would apply here if R. P. R. knew that the joint venture agreement contemplated that Bushman was to finance the contract and that the irrevocable letter of intent was an assurance that all money earned under the contract was to be delivered to a bank for the benefit of Bushman. In other words, if R. P. R. knew of Bushman's right to the progress payments, it would pay them to someone else at its peril.
 
 
 12
 The third claim for relief is susceptible to a construction that it charges fraud. It would not be essential to the cause of action for fraud that Bushman have any constractual relationship with R. P. R. If R. P. R. participated with Conner in a scheme to defraud Bushman a cause of action would lie against both of the participants, and their liability would be joint and several. Miller v. Singer, 131 Colo. 112, 279 P.2d 846; Julius Hyman & Co. v. Velsicol Corp., 123 Colo. 563, 233 P.2d 977, cert. denied 342 U.S. 870, 72 S.Ct. 113, 96 L.Ed. 654; Meek v. Smith, 59 Colo. 461, 149 P. 627.
 
 
 13
 We conclude that disputes of material fact do exist between the parties with respect to the date on which the joint adventure was formed, and as to whether and when R. P. R. had notice or knowledge of the joint adventure between Conner and Bushman. Without limiting the trial to these issues, and recognizing that there may be defenses which will appear in further pleadings, we are convinced that, on the record as presented to us, Bushman Construction Company is entitled to a trial on these questions, as well as the issues raised by the third claim for relief.
 
 
 14
 Reversed.
 
 
 
 Notes:
 
 
 [1]
 This instrument was designated "Subcontract No. 581."
 
 
 [2]
 The written agreement reads as follows:
 "W. S. Conner Construction Company P. O. Box 1796 Colorado Springs, Colorado.
 "Gentlemen: Confirming verbal agreement, W. S. Conner and Bushman Construction Company hereby agree that they shall participate in contract between W. S. Conner Construction Company and R. P. R. Construction Company for construction work in the amount of Two Million One Hundred Eighty Four Thousand Six Hundred Dollars ($2,184,600.00) located at the Air Force Academy near Colorado Springs, Colorado, all on the following terms and conditions:
 "1. Bushman Construction Company will pay all bills, payrolls, insurance, etc. and receive all payments.
 "2. Bushman Construction Company shall secure proper performance and payment bonds in name of W. S. Conner Construction Company to R. P. R. Construction Company.
 "3. Bond application will be signed by Conner and indemnity signed by Bushman Construction Company.
 "4. Conner will sign the assignment and have R. P. R. Construction Company accept same covering all payments to be made to the Mechanics Bank, St. Joseph, Missouri.
 "5. Invoice for bonds will be made by bonding company to R. P. R. Construction Company for them to pay in accordance with their contract.
 "6. Bushman Construction Company will pay Conner One Thousand Dollars ($1,000) monthly for a maximum of eighteen months as a drawing account that will be charged to job construction costs, and will also pay legitimate expenses of Conner incurred with connection with management of the job.
 "7. No charge will be made Conner for Bushman Construction Company home office salaries or expenses.
 "8. After job is completed and accepted by the proper authorities and retained percentage release, Bushman Construction Company will pay Conner fifty (50) percent of any excess of receipts over payments, and during the progress of the job Bushman Construction Company shall furnish Conner monthly statement showing all charges made."
 
 
 [3]
 This instrument provided:
 "To R. P. R. Construction Company
 "From: W. S. Conner Construction Company
 "You are hereby directed to forward all proceeds due Conner Construction Company under contract between that company and R. P. R. Construction Company concerning the Air Force Academy Title VIII Housing Project, Bid No. (IFB)-05-613-58-30, Specification No. AFA 87. to Mechanics Bank, St. Joseph, Missouri. This direction shall be irrevocable.
 "Dated this 2nd day of June, 1958.
 W. S. Conner Construction
 Co. by W. S. Conner
 (signed)
 Owner
 "Receipt of the foregoing Direction of proceeds is hereby acknowledge [sic] this ___ day of June, 1958.
 R. P. R. Construction
 Company by Harry M.
 Rubenstein (signed)"
 
 
 [4]
 The complaint reads in part:
 "5. In furtherance of the conspiracy the Defendant R. P. R. made repeated promises to the Plaintiff that large sums of money would be forwarded to the said Mechanics Bank in accordance with the previous agreements, and in reliance upon these promises and assurances the Plaintiff continued to pay the bills arising by reason of the work performed pursuant to said Subcontract No. 581 so that by July, 1959, the Plaintiff had advanced approximately Four Hundred Sixty-Five Thousand One Hundred Twelve and no/100 Dollars ($465,112.00) in excess of the amount which had been received. Had the Defendants made payments as called for under the Agreement with Plaintiff and the subsequent promises, Plaintiff's deficit of monies advanced over receipts would not have approximated said sum.
 "6. During the period from April to August, 1959, the Plaintiff made repeated requests and demands for the payment of the amounts due under its Agreement and as promised by Defendant R. P. R., and finally Plaintiff advised Defendants and particularly Defendant R. P. R. that it could not continue to pay labor and material bills in the absence of payment to it of monies due. On or about August 3, 1959 and pursuant to Plaintiff's advising as to its unwillingness to continue to pay labor and materials bills unless the Defendants carried out their agreements with and promises to the Plaintiff, the said Defendant R. P. R. confirmed his prior assurances that laege [sic] sums of money would be forwarded to said Mechanics Bank in the immediate future for receipt by Plaintiff under the agreements and procedures theretofore established. By check dated August 6, 1959 (which check is attached as Exhibit "C"), Defendant R. P. R. did in fact forward a check for One Hundred Fifty Thousand and no/100 Dollars ($150,000.00) to said Bank, which check was endorsed and deposited to the amount [sic] of Plaintiff as aforesaid.
 "7. As a result of the receipt of said check and the promise of Defendant R. P. R. to forward an even larger sum in the immediate future, the Plaintiff continued to advance large sums of money in payment of labor and material used in performance of the work pursuant to said Subcontract No. 581, but the Defendant R. P. R. in futherance of said fraudulent conspiracy stopped payment on its said check in the amount of One Hundred Fifty Thousand and no/100ths Dollars ($150,000.00) and the Defendant Conner took steps to attempt to revoke the aforementioned Power of Attorney."
 
 
 [5]
 In the order granting summary judgment, the trial court stated:
 "6. That the First Amended Complaint alleges a cause of action as to Defendant R. P. R. Construction Co. only if it is obligated to the Plaintiff by a breach or by a conspiracy to breach the conditions of Exhibit `B'."
 
 
 [6]
 The written contract states that it is a confirmation of a verbal agreement. One of the important obligations of Bushman was to secure proper performance and payment bonds in the name of Conner to R. P. R. Of necessity, this obligation of Bushman was performed before Conner's subcontract was executed, and R. P. R. knew that Bushman was the indemnitor of the bonds