BUSHMAN CONSTRUCTION COMPANY, Appellant,

v.

AIR FORCE ACADEMY HOUSING, INCORPORATED et al., Appellees.

No. 7263.

United States Court of Appeals
Tenth Circuit.

Jan. 27, 1964.

Rehearing Denied March 2, 1964.

C. Blake Hiester and Bill Earl Tom, Denver, Colo. (Hiester, Tanner & Clanahan, Denver, Colo., were with them on the brief), for appellees, The Maryland Cas. Co., Del E. Webb Constr. Co., R.P.R. Constr. Co., and Rubenstein Constr. Co.

Laurence W. DeMuth, Jr., Denver, Colo. (Akolt, Shepherd & Dick, Denver, Colo., and Carl F. Eiberger, Denver, Colo., were with him on the brief), for appellant.

Before LEWIS, HILL and SETH, Circuit Judges.

SETH, Circuit Judge.

This is a companion case to Bushman Construction Co. v. Conner, 307 F.2d 888 (10th Cir.), and now pending in the United States District Court for the District of Colorado.

The trial court granted motions to dismiss and motions for summary judgment on behalf of the various defendants. Bushman Construction Company, the plaintiff below, is appealing such orders.

The present diversity action is based primarily on the general lien statutes

of Colorado, Colo.Rev.Stat.1953 Ann., §§ 86–3–1 to –24, and also contains a separate in personam cause of action. Plaintiff-appellant asserts two liens: One for $720,819.95 by reason of the performance of a subcontract known as Subcontract 581, and the other by virtue of the assignment of a lien from The Harrison Engineering & Construction Corporation for $25,125.00. Both of the liens are claimed against certain property in the Armed Forces Housing (Capehart) project at the Air Force Academy in El Paso County, Colorado. Defendants, Del E. Webb Construction Co. (Webb) and Rubenstein Construction Co. (Rubenstein), were prime contractors on this project, and The Maryland Casualty Company was the surety on the prime contractors' bond. R.P.R. Construction Co. (R.P.R.), a first tier subcontractor under Webb and Rubenstein, in turn subcontracted a part of its work to the plaintiff-appellant and its alleged joint venturer, W. S. Conner, by the execution of Subcontract 581. The appellee housing corporations of Delaware are the owners of the leasehold estates and the improvements which were constructed. The State Treasurer of Colorado and The Colorado Public Employees' Retirement Association are joined as defendants by reason of the fact that they are the present owners of the mortgages on the subject leaseholds.

The complaint alleges that the appellant and Conner, as joint venturers, undertook to perform Subcontract 581. Appellant claims that it furnished services, material and labor which contributed to the completion of the work and that appellant received $1,463,780.05 of the contract price of $2,184,600.00. Appellant seeks the difference, $720,819.95, by way of foreclosing a statutory lien. W. S. Conner is not named in the complaint as a party and was not initially joined or served.

As to the assigned lien, the complaint recites the assignment of a $25,125.00 lien claim to the appellant from The Harrison Engineering & Construction Corporation and prays for judgment in this amount, together with a decree foreclosing the lien. This lien arose from the performance of Subcontract 581, but was assigned to appellant individually.

The complaint also seeks a judgment against appellee, The Maryland Casualty Company, for each amount on bonds it executed as surety for the prime contractors.

On December 20, 1960, the motion of The Maryland Casualty Company to dismiss was granted on the ground that Conner, appellant's joint venturer, was an indispensable party to the action and had not been served with process. This order of dismissal was later applied by a subsequent order to all matters contained in the complaint.

On December 20, 1960, the housing corporations' motion to dismiss was also granted on the ground that Conner was an indispensable party to the claim under Subcontract 581. The court on the same day denied the motion to dismiss as to the claim of the appellant as assignee of the Harrison claim.

Webb's motion for summary judgment on the ground that payment had been made, that there was no privity between Webb and appellant, and that Conner was an indispensable party was granted on December 28, 1960.

Thereafter appellant moved for an order vacating or modifying the order of dismissal entered on December 20, 1960, to allow the appellant time to serve Conner. At the same time, approximately, appellant filed a motion seeking authority to serve Conner and other parties outside the District pursuant to 28 U.S.C. § 1655, and this motion was granted. On February 6, 1961, the court denied the appellant's motion to modify the order of dismissal of December 20, 1960. On March 16, 1961, Conner filed his answer, pleading the merits of the case. He denied all the allegations of the complaint and expressly denied there was ever a joint venture.

On April 11, 1961, Webb, Maryland, and the housing corporations filed a joint motion for summary judgment as to the

assigned Harrison lien. This joint motion was granted on September 25, 1962, on the ground that under Colorado law, rental of equipment could not be the basis for a lien.

The motion for summary judgment filed by Rubenstein and R.P.R. relating to all of appellant's claims was granted September 25, 1962. As to Subcontract 581, the grounds for dismissal were payment and lack of privity of contract between the appellant and these appellees as noted in the December 28, 1960, order. As to the assigned claim, the ground for granting the summary judgments was that the work was not lienable and there was no privity.

Summary judgment in the September 25, 1962, order was also granted to the State Treasurer of Colorado and The Colorado Public Employees' Retirement Association, the housing corporations, and Webb on the same grounds. An order for final judgment was entered on October 25, 1962.

## I.

The Claim Under Subcontract 581.

Under this subcontract to W. E. Conner, which the complaint alleges was performed by a joint venture of appellant and Conner, the claim is made that there is an unpaid balance of $720,819.95. The complaint seeks personal judgments against the appellees and also asserts a lien against the property on which the improvements were constructed.

To dispose of the motions, the trial court properly considered the complaint, depositions, motions, exhibits, and admissions all together. In doing this, the allegations in the pleadings may be evaluated in the light of the depositions and the additional factual material before the court and a determination made whether material issues of fact actually exist. After this has been done, should no material fact "dispositive of right or duty remain in the case," summary judgment is proper. See Bushman Construction Co. v. Conner, 307 F.2d 888 (10th Cir.), and cases therein cited.

The record before us contains nine final payment and waiver of lien certificates signed by W. E. Conner. The record further shows that the entire amount due on Subcontract 581 was paid by R.P.R. to Conner or on his accounts. The complaint and the claim of lien assert there was a joint venture between appellant and Conner in the performance of Subcontract 581. Appellant in its complaint is asserting the joint venture did not receive the full payment. The record shows that W. E. Conner was in charge of the performance of the work under the subcontract. Appellant entered the picture primarily in the role of financier and to provide a performance bond. The record shows no dispute between the joint venture and R.P.R. as to the performance of the work. There is no substantial question of fact remaining on the question of payment and waiver of liens. There is a legal question as to whether Conner as one of the joint venturers could execute releases and payment certificates binding on the joint venture.

The authorities universally hold that the action of one joint venturer which relates to the object for which the venture was formed is binding on the other parties. In the companion case, Bushman Construction Co. v. Conner, supra, it was stated by this court that there was this joint venture between Bushman and Conner. The court then stated, "as a general proposition, the substantive law of partnerships is applicable to joint adventures," citing Taylor v. Brindley, 164 F.2d 235 (10th Cir.). The court then continued: "The application of partnership law invokes agency rules since a partner is the agent for the other partners." In the cited decision, the court indicated that the Colorado Supreme Court had not passed on the specific question but that it was felt likely it would follow the principles indicated above. In the case at bar, the execution of waivers of lien and certificates of payment was a matter within the objectives of the joint venture, and consequently Conner was empowered to execute such documents

and they are binding upon the joint venture.

■ The Colorado Supreme Court has held in Bishop v. Moore, 137 Colo. 263, 323 P.2d 897, that an indebtedness in favor of the claimant must exist before a valid lien claim may be made. Thus the execution of the waiver of lien and payment certificates defeats appellant's cause of action both as to the asserted lien under this Subcontract 581, and as to the personal judgments sought thereon against all appellees. The trial court properly granted the motions for summary judgment. In these circumstances, summary judgment was an appropriate remedy. Wagoner v. Mountain Savings & Loan Ass'n, 311 F.2d 403 (10th Cir.).

■ The appellant in its brief seeks to place the appellee, The Maryland Casualty Company, in a different position. This appellee, as above mentioned, was the surety on the performance bonds of the prime contractors. The appellant sought judgment against this appellee on these bonds. The trial court granted motions by this appellee to dismiss on the ground that Conner was an indispensable party and had not been served. However since appellant's claim for personal judgment and also claim of lien against the prime contractors and their subcontractor R.P.R. Construction Company must fail by reason of the fact that payment in full had been made on the subcontract and the certificates duly issued, it necessarily follows that the personal judgment on this subcontract sought against The Maryland Casualty Company on the same facts must likewise fail. The obligation on the part of the principal has been met, and no cause of action can be asserted against the surety. Thus The Maryland Casualty Company was properly dismissed from the action, although the grounds for dismissal should have been those indicated above. Our consideration of this dismissal relates only to the cause of action based on Subcontract 581.

The in personam cause here alleged against R.P.R. is one which asserts in effect that payment was not made under Subcontract 581. This contention fails, as discussed above, because the record shows that all payments were made to one of the joint venturers. Thus R.P.R. has performed under Subcontract 581 to the extent of making the payment to Conner or on his accounts, and that is the only question to be disposed of. The question whether or not R.P.R. should have paid these sums to another of the joint venturers, and the effect of a document concerning the application of payments, is not here concerned. This is an issue in the companion case pending in the District Court, and this opinion is not intended to affect such issue in any way.

## II.

### The Assigned Lien.

The principal question concerning the lien assigned to appellant by The Harrison Engineering & Construction Corporation is whether a person renting equipment to a contractor can claim a lien under Colorado statutes.[1]

1. Colo.Rev.Stat.1953 Ann., § 86–3–1:
"Mechanics, material men, contractors, subcontractors, builders, and all persons of every class performing labor upon or furnishing materials to be used in the construction, alteration, addition to, or repair, either in whole or in part, of any building, mill, bridge, ditch, flume, aqueduct, reservoir, tunnel, fence, railroad, wagon road, tramway or any other structure or improvement upon land, and also architects, engineers, draftsmen and artisans who have furnished designs, plans, plats, maps, specifications, drawings, estimates of cost, surveys or superintendence, or who have rendered other professional or skilled service, or bestowed labor in whole or in part, describing or illustrating, or superintending such structure, or work done or to be done, or any part connected therewith, shall have a lien upon the property upon which they have rendered service or bestowed labor or for which they have furnished materials or mining or milling machinery or other fixtures, for the value of such services rendered or labor done or material furnished, whether at the instance of the owner, or of any other person acting by his authority or under him, as

The equipment rented consisted of a water truck, dozer, motor grader, two pickup trucks, and two air compressors. It was rented to the joint venture of the appellant and Conner to be used in the performance of Subcontract 581. The record contains a deposition by an employee of appellant stating that the officers and directors of appellant and of The Harrison Engineering & Construction Corporation are the same, and that the stockholders are also the same with the same proportional stock interests in each. The claim of lien was for the invoice amounts of rental plus invoiced charges for hauling the equipment.

There do not appear to be any reported Colorado cases on the point. The parties rely upon several decisions in Colorado on related points and containing general language. It is necessary under these circumstances to consider these cases in some detail to determine what the Colorado courts have indicated the answer would be.

The first to be considered is the early case of Rara Avis Gold & Silver Mining Co. v. Bouscher, 9 Colo. 385, 12 P. 433 (1886). In this case the plaintiff asserted a mechanic's lien for his services as foreman, superintendent, mechanic, and as defendant's agent in disbursing its money and in keeping its accounts. The general Colorado lien statute then provided: "All artizans, mechanics, and others who shall perform work or labor * * * for the construction or repair of any building, or other superstructure, shall have, and may claim and hold, a lien * * *." The court held that the plaintiff's services in planning and superintending development work and the erection of the mill were labor upon the property within the meaning of the statute. The court observed that liens are allowed for many kinds of labor that the authori-

ties term "incidental," such incidental labor must be directly done for, and connected with, or actually incorporated into, the building or improvement. It is also said that protection cannot be extended to those services indirectly and remotely associated with the construction work. Also the cook who prepares the food for the employees, the blacksmith who shoes the horses or repairs the implements in use, and all similar contributors to the enterprise are not among the favored workmen.

The second Colorado case is Lindemann v. Belden Consol. Mining & Milling Co., 16 Colo.App. 342, 65 P. 403 (1901). The court there held that a geologist and mining expert who had contracted to explore certain mines and surrounding country was not entitled to assert a lien for such services. The court said that a mechanic's lien statute should be liberally construed as to the remedial portion of it, but must be strictly construed in determining the question as to whether the right to a lien exists. Also it noted that the principle of such statutes is to give security to materialmen and mechanics in or on values that they have directly contributed to create. The court said further that it would be judicial legislation for courts to extend their provisions so as to include demands not fairly covered by the statutory language used, and that protection should not be extended to services indirectly and remotely associated with the construction work.

Later in Chicago Lumber Co. v. Newcomb, 19 Colo.App. 265, 74 P. 786 (1903), the court considered claimed liens for labor and materials supplied to a contractor. The primary question there appeared to be the constitutionality of the statute; but the court also discussed liens generally and observed that the construction of a building is a cooperative

agent, contractor, or otherwise, for the work or labor done or services rendered or materials furnished, by each respectively, whether done or furnished or rendered at the instance of the owner of the building or other improvement, or his agent; and every contractor, architect,

engineer, subcontractor, builder, agent or other person having charge of the construction, alteration, addition to, or repair, either in whole or in part, of any building or other improvement, as aforesaid, shall be held to be the agent of the owner for the purposes of this article."

venture, and the accomplishment of the work requires the purchase of material and the employment of mechanical and other labor, of all of which the owner receives the benefits. Also the court noted that the underlying doctrine is that the party who has enhanced the value of property by incorporating therein his labor or materials shall have a preferred claim on the property for the value of his labor or materials. The court then said that according to the statute, the liens were not to benefit just mechanics, but "others" as well. The Colorado court there stated that the Colorado act was evidently modeled on California's.

There followed Farmers' Irrigation Co. v. Kamm, 55 Colo. 440, 135 P. 766 (1913), which concerned a lien on a ditch and reservoir claimed on account of materials furnished to Harris, a subcontractor. Hokasona contracted to build up the banks of the ditch and to enlarge the dam of the reservoir; Hokasona subcontracted this work to Harris. Harris was not to supply materials and was to be paid according to the amount and type of earth moved. Harris purchased lumber and hardware items from the plaintiff which were used to erect sheds and bunkhouses. The court held that these materials, in these circumstances, did not establish a lien under the Colorado statute. The court went on to say that under such statute, in order for one to have a lien, the material must be used in the construction of the structure so as to become a part of it when completed. It said also that the fundamental principle upon which mechanics' liens are based is that labor and material have gone into the property of another and made it more valuable, so that when the owner is called upon to protect his property from a lien by paying for the labor or material, he is but paying for something that he has received. The court stated that it would be violative of the fundamental principle and would be extending the provisions of the statute to hold that a lien exists for materials there furnished. The court noted that the materials were used about the job as an aid to him as tools and

appliances are aids, and were not intended to go into the structure or to be directly consumed in its betterment, but are to be taken away when the work is completed, as the tools and appliances are taken away. It held that before a lien may be claimed, it is necessary that the material furnished be actually used and wrought into the structure to become a part thereof, or if not, it be directly consumed in its betterment, and be of the kind called for in the contract between the contractor and subcontractor before a lien will lie therefor.

The Colorado Supreme Court in Great Western Sugar Co. v. F. H. Gilcrest Lumber Co., 25 Colo.App. 1, 136 P. 553 (1913), had before it an interpretation of the lien statute in relation to the allowable amount of a lien and the necessity of notice. The court considered liens generally and said that the theory of the Colorado statute was that liens were allowed because of the enhanced value of the property caused by the labor and material so contributed to it by the consent of the owner through his contractor.

In Brannan Sand & Gravel Co. v. Santa Fe Land & Improvement Co., 138 Colo. 314, 332 P.2d 892 (1958), a claim of lien was made by a subcontractor for paving a roadway, and the court after quoting a part of the statute here involved said:

"The above basic provision of the statute has been retained virtually intact as it appears in Mills Annotated Statutes (1891) vol. 2, sec. 2867, down to the present. In the express words of the statute, containing, as we believe, no ambiguity, there are two limitations on the lien involved. First, it is granted only upon the property upon which the labor, services and material are bestowed or rendered; second, only to the extent of the *value* of the labor, services and material *rendered upon the property*."

The Brannan case just quoted from is not one involving the rental of equipment, but the specific limitation laid down by the court that the lien is

only for the value of the labor, services, and materials rendered on the property is significant. This, considered with the Farmers' Irrigation case which concerned materials, clearly held that materials furnished must be wrought into the structure to become a part of it when completed, in order to claim a lien. It also stated that a contractor's "aids" as his tools and appliances not intended to go into the structure or be consumed, but to be taken away when the job is done, are not within the statute. These cases, with the indications in the others cited, lead us to the conclusion that under Colorado law, rental fees for equipment provided to a contractor cannot serve as a basis for a lien. This seems to be in accord with the majority of courts which have considered the matter; however, comparisons are difficult because of variations in the statutes. A few of the cases are Potter Mfg. Co. v. A. B. Meyer & Co., 171 Ind. 513, 86 N.E. 837; Henry Bickel Co. v. National Surety Co., 156 Ky. 695, 161 S.W. 1113; Steele & Lebby v. Flynn-Sullivan Co., 245 Ky. 772, 54 S. W.2d 325; Hall v. Cowen, 51 Wash. 295, 98 P. 670; National Surety Corp. v. Highland Park Country Club, 240 La. 747, 125 So.2d 151; Sundberg v. Boeing Airplane Co., 52 Wash.2d 734, 328 P.2d 692; Lohman v. Peterson, 87 Wis. 227, 58 N.W. 407; Bunting Hardware Co. v. Baker, 116 Kan. 683, 229 P. 72; Thomas v. Commonwealth, 215 Mass. 369, 102 N.E. 428.

In Chicago Lumber Co. v. Newcomb, 19 Colo.App. 265, 74 P. 786, as mentioned above, the court stated that Colorado's lien law was modeled after the California act. The New Mexico Supreme Court in the recent case of Lembke Construction Co. v. J. D. Coggins Co., 72 N.M. 259, 382 P.2d 983, stated that its act was also taken from California, although perhaps not at the same time as was Colorado's, and expressly held that a lien could not be claimed for the rental of equipment. The New Mexico court there discusses the California authorities and others. The Colorado court in the recent case of Kalamath Investment Co. v. Asphalt

Paving Co., Colo., 384 P.2d 938, held that a claimant at all times has the burden of proving its right to lien.

■■■ We recognize that construction work today utilizes vastly more equipment than when the Colorado lien law was enacted. It is also common knowledge that today machinery and equipment are often rented by contractors from other persons. However, these are factors which are for the consideration of those in the legislative branch. We must take the law and decisions of Colorado as we find them, and as they have been applied to similar situations.

We therefore hold that the trial court was correct in its view that the assigned claim could not serve as a basis for a lien, and there was no privity to support an in personam action against appellees other than The Maryland Casualty Company. We affirm the summary judgments and the granting of motions of all parties except The Maryland Casualty Company.

■■■ The Maryland Casualty Company is in a different position as to the in personam judgment sought against it under the assigned claim. As to this matter, the complaint seeks the judgment independently of any claim of lien and upon a performance bond executed by this appellee as surety for the prime contractor. The record does not contain a copy of the bond and its conditions are not otherwise stated. The determination of this claim on motion was not proper. The standards or requirements discussed above which are necessary to establish a lien do not prevail in actions on bonds, as the wording of the particular bond must of course determine its conditions. It may be broader or more restrictive than the lien statutes which may be concerned in the same action. These differences are demonstrated in actions under the Miller Act. We are aware of the effect of the companion case which is now pending in the District Court. The record here shows also that the assignor of this claim, The Harrison Engineering & Construction Corporation,

has the same officers, directors and stockholders as does appellant. It also shows that the claim is for equipment furnished the joint venture in which appellant was a member. Nevertheless, there remains the question as to the existence of the bonds alleged, their conditions, and related questions of fact. This claim is advanced by appellant individually and not on behalf of the joint venture; thus the matter of indispensable parties is not involved. The trial court was in error in granting the motion of The Maryland Casualty Company to dismiss.

Reversed as to the granting of the motion to dismiss of The Maryland Casualty Company insofar as it relates to the claim assigned from The Harrison Engineering & Construction Corporation.

Affirmed as to all other motions granted and dispositions made by the trial court, including the granting of the motion to dismiss of The Maryland Casualty Company insofar as it relates to the claim asserted under Subcontract 581.