351 F.2d 681
 BUSHMAN CONSTRUCTION COMPANY, a Missouri Corporation, Appellant,
v.
W. S. CONNER, and individual, doing business as W. S. Conner
ConstructionCompany, and R.P.R. Construction
Company, an Arizona corporation, Appellees.
R.P.R. CONSTRUCTION COMPANY, an Arizona corporation, Cross-Appellant,
v.
BUSHMAN CONSTRUCTION COMPANY, a Missouri Corporation, Cross-Appellee.
 Nos. 7858, 7859.
 United States Court of Appeals Tenth Circuit.
 Oct. 5, 1965, Rehearing Denied Nov. 24, 1965.
 
 Laurence W. DeMuth, Jr., of Akolt, Shepherd & Dick, Denver, Colo., and Richard U. Simon, of Simon & Simon, Fort Worth, Tex. (Stuart S. Gunckel, of Akolt, Shepherd & Dick, Denver, Colo., on the brief), for Bushman Construction Co., appellant and cross-appellee.
 C. Blake Hiester and Bill Earl Tom, of Hiester, Tanner & Clanahan, Denver, Colo., for R.P.R. Construction Co., appellee and cross-appellant.
 Before MURRAH, Chief Judge, and PICKETT and SETH, Circuit Judges.
 PICKETT, Circuit Judge.
 
 
 1
 Bushman Construction Company brought this action against W. S. Conner and R.P.R. Construction Company,[1] to recover money alleged to be due in connection with the performance of a subcontract on a military housing project at the United States Air Force Academy near Colorado Springs, Colorado. On a former appeal we reversed a summary judgment in favor of R.P.R. and remanded the case for trial. Bushman Construction Co. v. Conner, 10 Cir., 307 F.2d 888.[2] Upon trial Bushman recovered judgment in the sum of $87,681.23, and appeals on the ground that the award is inadequate. R.P.R. cross-appeals, contending that as a matter of law, it was under no obligation to Bushman.
 
 
 2
 Briefly stated, the pertinent facts are: In April of 1958, R.P.R. negotiated with Conner for a subcontract to perform a substantial portion of its contract for construction of the aforesaid housing unit. On April 25, R.P.R. delivered to Conner a letter of intent to award to Conner a subcontract whereby it agreed to pay to Conner the sum of $2,184,600.00 for the work to be performed. Conner was in need of financial assistance and discussed the matter with Bushman. Bushman agreed to furnish the performance bond and the necessary finances to complete the subcontract. On May 22, 1958, the subcontract was executed by R.P.R. and Conner. Early in June, Bushman sent a representative to Colorado Springs to investigate the work to be done. The representative reported to Bushman that the contract was satisfactory and recommended that Bushman enter into an agreement with Conner to participate in its performance. On June 2, 1958, Bushman and Conner entered into a contract which, throughout these proceedings, has been recognized by the parties as creating a joint adventure. The contract provided that Bushman was to furnish the required bonds, pay all bills necessary to complete the contract and allow Conner to draw $1,000 per month. All payments due from R.P.R. were to be made to the Mechanics Bank at St. Joseph, Missouri, where they were to be credited to Bushman's account. After the job was completed and accepted, Bushman was required to pay Conner 50% Of the funds remaining in its possession. On the same day, Conner executed and delivered an instrument directing R.P.R. to forward all proceeds due under the Conner subcontract to the St. Joseph bank.[3] R.P.R. acknowledged receipt of the latter instrument and made payments accordingly for more than one year. Within a week or ten days after the Bushman-Conner arrangement, a representative of Bushman called on R.P.R.'s president and advised him of the contract and that he was there to assist in any way that he could. The president, replied that 'he was glad to see us on the job in connection with Conner.'
 
 
 3
 As the work progressed on the subcontract, R.P.R. forwarded to the St. Joseph bank all progress payments. In June of 1959 these payments totaled over $1,400,000.00. At that time Bushman had paid out approximately $1,900,000.00, and refused to make any further advances until additional funds due on the subcontract were paid. After conferences with representatives of Bushman, R.P.R. agreed to forward $150,000.00, and to later deliver additional sums which were being held in escrow. On August 6, 1959, R.P.R.'s check for $150,000.00, drawn on the First National Bank of Phoenix, Arizona, was sent to the St. Joseph bank. Conner's name was endorsed on the check in the usual manner and the amount deposited to Bushman's account. In the meantime, Conner notified the Phoenix bank that authority to endorse the check had been revoked. R.P.R. then stopped payment on the check and it was never paid. When no more proceeds were forthcoming, Bushman notified creditors and suppliers that they would have to look to Conner for their money. At that time most of the work on the subcontract had been completed, but there remained accounts upon which there was due a substantial amount chargeable against the subcontract for work completed and to be completed.
 
 
 4
 Following the discontinuance of the Bushman-Conner arrangement, R.P.R. disbursed funds due on the subcontract jointly to Conner and creditors for settlement of expenses properly chargeable to the Conner subcontract, or to a bank account over which R.P.R. had control.[4] In addition, there were payments made to Conner directly which were not applied to expenditures chargeable against the subcontract. These payments, together with interest, totaled $87,681.23. The trial court held that 'R.P.R. was under a duty to Bushman to either send the checks for payments due on the Conner subcontract to the Mechanics Bank, or see to it that the payments so made on the Conner subcontract were applied to expenses properly chargeable to that subcontract', and that Bushman was entitled to recover all sums not so applied.
 
 
 5
 Although it is conceded that R.P.R. knew that Bushman had agreed to indemnify the surety on Conner's bond, and was involved in the subcontract, the trial court found that R.P.R. was not furnished with a copy of the agreement between Conner and Bushman, and that 'at no time prior to the institution of this suit was R.P.R. advised that Bushman claimed to be a joint venturer in or a party to the Conner subcontract.' This finding is supported by the record. The court also found that R.P.R. did not conspire with Conner to defraud Bushman, and that the delivery of checks to Conner contrary to the instrument directing the payment of the proceeds to the St. Joseph bank was not for the purpose of defrauding Bushman or to further a conspiracy between Conner and R.P.R. to deprive Bushman of the benefits of the Conner subcontract. This finding is also supported by the record. In the former appeal we held that these were factual questions to be determined by a trial. With these facts established, there remains the question of whether R.P.R. has any further duty to Bushman. As we interpret the trial court's conclusion, Bushman had a lien on the funds in possession of R.P.R., and that R.P.R., an experienced contractor, had sufficient notice of the lien to be bound by it. Under the circumstances, unless clearly erroneous, the determinations by the trial court of applicable Colorado law will be upheld. First National Bank & Trust Co. of Oklahoma City, Okl. v. Foster, 10 Cir., 346 F.2d 49, and cases cited.
 
 
 6
 The evidence establishes without dispute that for over one year R.P.R. sent all of the Conner checks to the Mechanics Bank at St. Joseph, Missouri, where they were endorsed and the money deposited to Bushman's account. Although R.P.R. did not know the details of the contractual relationship between Bushman and Conner, it did know that during this time Bushman used these funds to pay for labor and material furnished to the Conner subcontract, and knew that the 'Direction of Proceeds' instrument was for Bushman's protection. It knew that Bushman had paid out, for the benefit of the Conner subcontract, about $500,000.00 more than it had received. R.P.R. knew from conferences with Bushman's representatives that these advances were chargeable to progress payments due. These conferences and requests for additional payments resulted in the delivery of a $150,000.00 check, which was never paid.
 
 
 7
 The trial court's theory of liability is based upon the rule announced in School Dist. No. 3 v. Central Savings Bank & Trust Co., 113 Colo. 487, 159 P.2d 361, and Mitchell v. Bowman, 10 Cir., 123 F.2d 445. See, also, Clatworthy v. Ferguson, 72 Colo. 259, 210 P. 693; American Agency & Investment Co. v. Gregg, 90 Colo. 142, 6 P.2d 1101. These cases establish a right in the nature of a lien in favor of one who assists in bringing a fund into existence. Undoubtedly Bushman's contribution to the Conner subcontract was to a large extent responsible for the creation of the fund held by R.P.R. For more than one year all the proceeds from the Conner subcontract went to Bushman, who was required to use any funds received by him to discharge claims against that contract. When a dispute arose between Bushman and Conner, R.P.R. assumed the responsibility of using the remaining amounts due on the subcontract to discharge claims against that contract. When R.P.R. paid claims properly chargeable against the subcontract, it discharged obligations for which Bushman was liable, consequently it was not injured by R.P.R.'s failure to deliver the funds to it. No contention is made that there was any money in the possession of R.P.R. after these payments were made.
 
 
 8
 The claim that R.P.R. is liable on the $150,000.00 check which it issued to Conner and which was endorsed to Bushman, is without merit. All of the funds which R.P.R. had, including the $150,000.00 were held to discharge obligations of the Conner subcontract, and were so used. If the money represented by the check had been received by Bushman, it would have been used for the same purpose.
 
 
 9
 Affirmed.
 
 
 
 [1]
 The parties will be referred to as 'Bushman', 'Conner', and 'R.P.R.'
 
 
 [2]
 The same subject matter was later before the court in a companion case wherein Bushman unsuccessfully sought to establish a lien under the general lien statutes of Colorado. Bushman Construction Co. v. Air Force Academy Housing, Inc., et al., 10 Cir., 327 F.2d 481
 
 
 [3]
 These instruments are set forth in Footnote 2, Bushman Construction Company v. Conner, 307 F.2d 888, 890
 
 
 [4]
 R.P.R.'s president testified that this procedure was adopted to make certain 'that all funds that were to go on the job were to go to suppliers, laborers, equipment rental, and so forth. We took whatever precautions we could at that time to make sure that the money would go to people who had furnished materials, et cetera, to the job.'