**BUSHMAN CONSTRUCTION COMPANY, a Missouri corporation, Plaintiff,**

**v.**

**W. S. CONNER, an individual, doing business as W. S. Conner Construction Company and the Maryland Casualty Company, a Maryland corporation, Defendants.**

**Civ. A. No. 6743.**

United States District Court
D. Colorado.

Nov. 21, 1966.

Akolt, Shepherd & Dick, Laurence W. DeMuth, Jr., Denver, Colo., for plaintiff.

Hiester, Tanner & Clanahan, Bill Earl Tom, Denver, Colo., for defendant The Maryland Casualty Company.

Defendant W. S. Conner and W. S. Conner Construction Co. not appearing.

## MEMORANDUM OPINION
## FINDINGS OF FACT
## AND
## CONCLUSIONS OF LAW

CHILSON, District Judge.

Since the decision of the United States Court of Appeals, Tenth Circuit, in Bushman Construction Company v. Air Force Academy Housing, Inc. et al., 327 F.2d 481, there remains for disposition in this case the claim of the plaintiff against W. S. Conner and the Maryland Casualty Company. Plaintiff's claim is based on an assignment of a claim of the Harrison Engineering and Construction Corporation against Conner. After the Circuit Court's decision, an amended complaint was filed relating only to this claim.

Conner has not answered the amended complaint; he did not participate in the Pre-trial Conference, which was held March 4, 1966, and he has failed to appear by local counsel as required by the Local Rules of this Court and as specifically Ordered in the Pre-trial Order entered April 29, 1966. Accordingly, the default of the defendant Conner has been entered.

Maryland answered the amended complaint and on October 31, 1966, trial was had to the Court without a jury. The Court heard the evidence and argument of counsel and took the matter under advisement.

The principal issues to be determined are:

1. Was the defendant Conner indebted to Harrison Engineering Company for the use of its equipment by Conner in performing a subcontract on certain Capehart Housing projects at the Air Force Academy near Colorado Springs, Colorado?

2. If so, is Maryland liable to the plaintiff for Conner's debt as surety on the payment bond executed by the prime contractors as principals?

### FINDINGS OF FACT

Dell Webb Construction Company and the Rubenstein Construction Company as joint venturers were the prime contractors in a contract to construct several Armed Services housing projects (referred to as "Capehart Projects") at the Air Force Academy near Colorado Springs.

This was a multimillion dollar contract. The prime contractor performed a portion of the work (the cement and carpentry work) and subcontracted the balance to R.P.R. Construction Company. R.P.R., in turn, subcontracted its portion of the work to various subcontractors, one of which was the defendant Conner. The prime contractors were aware that R.P.R. intended to perform its subcontract by subcontracting to others. Conner's subcontract involved a substantial part of the work (in excess of Two Million Dollars).

In performing the subcontract, Conner used some equipment of the Harrison Engineering Company and agreed to pay rental therefor at the going rate at the time and place of use. The rental, computed at the going rate together with the cost of the transportation of the equipment is the sum of $25,125.00.

In accordance with the provision of the Capehart Act, 42 U.S.C.A. § 1594(a), the prime contractor, as principal, and the defendant Maryland Casualty Company, as surety, executed a "payment bond", which is in evidence as Exhibit One. The bond provides in its essential parts as follows:

"NOW, THEREFORE, the condition of this obligation is such that if the Principal shall promptly make pay-

ment to all claimants as hereinafter defined for all labor and material furnished in the prosecution of the work provided for in the Contract, then this obligation shall be null and void; otherwise, it shall remain in full force and effect. A claimant, as hereinafter defined, shall have a direct right of action hereunder against the Surety, subject to the following conditions:

"1. A claimant is defined as one having a direct contract with the Principal or with a subcontractor of the Principal who has furnished labor, material, or both, in the prosecution of the work provided for in the Contract and who has not been paid in full therefor. Labor and material are construed to include, but are not limited to, that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to the Contract."

The Court concludes that plaintiff is entitled to judgment against Conner for the sum of $25,125.00 together with interest thereon at the rate of six percent per annum from December 8, 1959 (the date plaintiff acquired the Harrison claim) and for its costs.

### OPINION RE: LIABILITY OF MARYLAND

Maryland makes two contentions as a basis for its claim of nonliability. The first is that since the United States Court of Appeals, Tenth Circuit, in Bushman Construction Company v. Air Force Academy Housing, Inc., 327 F.2d 481, held the principals on the bond were not personally liable to the plaintiff, therefore, the surety is not liable.

 It is clear from a reading of the bond that Maryland's obligation extends to all claimants furnishing materials and labor irrespective of whether or not the principals are personally liable to the claimants. The Court concludes the first contention is not valid.

This leads us to Maryland's second contention, which is that Harrison and its assignee, the plaintiff, are not "claimants" within the meaning of the bond

and, therefore, are not beneficiaries of the bond. Maryland points to the provision of the bond which states, "Claimant is defined as one having a direct contract with the principal or with a subcontractor of the principal." Admittedly, Harrison had no direct contract with the principals. There remains the question of the construction to be given to the words "subcontractor of the principal." Maryland contends that these words should be construed to mean only those subcontractors having a direct subcontract with the principals and not those who subcontract from a subcontractor. Or to put it another way, Maryland contends the words "a subcontractor of the principal" mean in this case only the first tier subcontractor, R.P.R. and does not include Conner who admittedly is a second tier subcontractor. If this construction is adopted, Harrison and its assignee, the plaintiff, are not entitled to the benefits of the bond and plaintiff cannot recover from Maryland.

We have found no case law construing a Capehart bond in the respects here involved and counsel have cited none.

In determining the construction to be given to the bond, we should properly consider the reason why the bond was required. The 1956 Amendment to the Capehart Act (42 U.S.C.A. § 1594) provides that any contract for the construction of a Capehart project " * * * shall provide for the furnishing by the contractor of a performance bond and a payment bond * * * and the furnishing of such bonds shall be deemed a sufficient compliance with the provisions of section 270a of Title 40 * * *" Section 270a of Title 40 is a part of the Miller Act. Although the term "payment bond" is not defined in Section 1594, the reference to the Miller Act clearly indicates that Congress had in mind a "payment bond" of the kind provided for in that Act.

The Miller Act states that the payment bond required is "for the protection of all persons supplying labor and material in the prosecution of the work * * *"

782

provided for in the prime contract, 40 U.S.C.A. § 270a.

■■ We conclude that the payment bond requirement of the Capehart Act is designed to serve the same basic purpose as the payment bond requirement of the Miller Act, that is, to furnish protection for those furnishing labor and material in the construction of projects, D & L Construction Co. v. Triangle Elec. Supply Co., 332 F.2d 1009 (Eighth Circuit). To limit the protection of a Capehart payment bond to those furnishing labor and materials to the prime contractor and the first tier subcontractor, in the Court's opinion, would defeat the purpose of the payment bond requirement of the Capehart Act.

■ The effect of such construction is illustrated by the facts of this case. The prime contractor did only the cement and carpentry work. All of the other construction was subcontracted to R.P.R. R.P.R. did no construction work but subcontracted the work to others. The strict construction for which Maryland contends would mean that in this case the suppliers of a great portion of the materials and labor which went into the construction of these projects had no protection under the payment bond.

The Court concludes that such a construction would violate the clear intent and spirit of the Act requiring the bond and that the bond should be construed to provide the protection which was clearly intended by the Capehart Act.

To this end, the Court construes the bond to provide protection to Harrison as one having a direct contract with Conner, a second tier subcontractor, and to the plaintiff as an assignee of the Harrison claim.

This liberal construction has support in at least two opinions of the United States Supreme Court. In United States, for use of Hill v. American Surety Co., 200 U.S. 197, 26 S.Ct. 168, 50 L.Ed. 437, New Jersey Foundry and Machine Company entered into a contract with the United States to construct four observation towers. At that time, an Act of

Congress (28 Stat. 278) required those who entered into contracts with the United States to construct public works to furnish a bond with the obligation "that such contractor or [subcontractor] shall promptly make payments to all persons supplying *him* or *them* labor and materials * * *" in the prosecution of the work. (Emphasis supplied.)

New Jersey Foundry as the principal and American Surety Company as surety furnished such a bond containing the statutory obligation. New Jersey subcontracted a portion of the work to Richard Manufacturing Company, which in turn employed the plaintiff Hill to scrape and paint the towers. Hill performed the work; Richard Company failed to pay him and he brought suit against the surety.

The surety insisted on a strict construction and contended recovery was limited to those who furnished material and labor directly to the contractor and those who furnished labor and materials to a subcontractor had no recourse to the bond.

The Court in holding for the plaintiff said in part:

"The courts of this country have generally given to statutes intending to secure to those furnishing labor and supplies for the construction of buildings a liberal interpretation, with a view of effecting their purpose to require payment to those who have contributed by their labor or material to the erection of buildings to be owned and enjoyed by those who profit by the contribution of such labor or materials. [Flagstaff Silver] Mining Co. v. Cullens [Cullins] 104 U.S. 176, 177, [26 L.Ed. 704]. And the rule which permits a surety to stand upon his strict legal rights, when applicable, does not prevent a construction of the bond with a view to determining the fair scope and meaning of the contract in the light of the language used and the circumstances surrounding the parties."

\* \* \* \* \* \*

"Statutes are not to be so literally construed as to defeat the purpose of the legislature. 'A thing which is within the intention of the makers of the statute, is as much within the statute, as if it were within the letter.' United States v. Freeman, 3 How. 556 [11 L.Ed. 724]. 'The spirit as well as the letter of a statute must be respected, and where the whole context of a law demonstrates a particular intent in the legislature to effect a certain object, some degree of implication may be called in to aid that intent.' Chief Justice Marshall in Durousseau v. United States, 6 Cranch, 307 [3 L. Ed. 232]."

\* \* \* \* \* \*

"If a construction is given to the bond so limiting the obligation incurred as to permit only those to recover who have contracted directly with the principal, it may happen that the material and labor which have contributed to the structure will not be paid for, owing to the default of subcontractors and the manifest purpose of the statute to require compensation to those who have supplied such labor or material will be defeated." (Emphasis supplied.)

In Mankin v. United States to Use of Ludowici-Celadon Co., 215 U.S. 533, 30 S.Ct. 174, 54 L.Ed. 315, under a similar set of circumstances and a similar bond as those considered in the Hill case, supra, the Supreme Court reaffirmed its decision in the Hill case.

Maryland, during the hearing, contended that the bond was not without limitation, otherwise, one who furnished the pigment for the manufacture of paint which was used on a Capehart project could recover on the bond. We recognize the validity of Maryland's contention that the bond is not without limitation as did also the Supreme Court in Clifford F. MacEvoy Co. v. United States, for Use and Benefit of Calvin Tomkins Co., 322 U.S. 102, 64 S.Ct. 890, 88 L.Ed. 1163. In that case the Supreme Court refused to impose liability on a Miller Act payment bond for materials furnished by a materialman to another materialman (not a subcontractor) who in turn furnished the materials to the prime contractor.

In this case we do not hold that there is no limitation on the liability of a Capehart payment bond. We hold only that the bond in question does inure to the benefit of Harrison as a supplier of equipment to Conner, a second tier subcontractor, and to the plaintiff as Harrison's assignee.

The plaintiff in this case, in its brief, took the position that R.P.R. was a de facto prime contractor and Conner a first tier subcontractor and in support thereof cited the case of G. L. Christian and Associates v. United States, 312 F.2d 418, 160 Ct.Cl. 1 (1963).

■ The Court finds as a matter of fact and under the facts concludes as a matter of law that R.P.R. was not a de facto prime contractor but, on the contrary, R.P.R. was in fact and in law a first tier subcontractor.

The Court concludes that the plaintiff is entitled to judgment against Maryland in the amount of $25,125.00 together with interest thereon at the rate of six percent per annum from December 8, 1959 and for its costs.

This matter is continued to 10:00 A. M. on the 25th day of November 1966, at which time counsel will appear before the Court with a proposed Order for Final Judgment prepared by plaintiff, which will include the computation of the interest to the above date.

These Findings of Fact, Conclusions of Law and Opinion are not a final judgment and final judgment shall not enter until the Court has entered a written Order therefor.